## Mullen *against* M'Kelvy.

The legality of the execution of a will must be judged of by the law as it was when it was executed, and not as it was at the death of the testator.

Each of two witnesses to a will, in order to establish its execution, must testify to all that the law requires, in order to justify the court in permitting it to go to the jury.

When one subscribing witness testifies positively to the execution of a will, and the other, that he remembers having subscribed a will as a witness, at the request of the testator, and will not say positively whether his name as a witness to the will, is his signature or not, the court rightly permitted the will to be read to the jury.

ERROR to the district court of *Alleghany* county.

This was an action of ejectment by William Mullen and his wife, against Samuel M'Kelvy for the undivided half of six acres of land, in the northern liberties of Pittsburgh.

The only question in the cause, was whether the will of Hugh M'Kelvy was legally proved. The defendant was a devisee under the will, and the plaintiffs claimed as heirs at law.

The subscribing witnesses to the will were Thomas Hamilton, who wrote it, and Isaac Walker. The former testified positively to the execution of the will, and all the circumstances attending it: the latter, that he had been called upon to witness Hugh M'Kelvy's will, and did sign his name as a witness; but to all questions asked him, whether he believed his name to be his signature, he answered, that he would not be positive; that it looked like his, &c. as is more particularly set forth in the opinion of the court. After the proof, thus given, the defendant offered to read the will to the jury. The plaintiff objected on the ground that it was not legally proved by two witnesses: but the court, (Grier, President), overruled the objection, to which the plaintiffs excepted.

*Biddle* and *Fetterman* for plaintiffs in error, cited Huff *v.* Huff, 6 *Serg. & Rawle* 47; 16 *Serg. & Rawle* 86; 8 *Vez.* 476; 1 *Watts* 463.

*Lowry* and *Forward* for defendants in error. The execution of the will must be established by the evidence required by the law as it was when it was executed, and not as it was at the death of the testator. *Amb.* 550; 3 *Atk.* 551; 2 *Atk.* 36; *Prec. in Chanc.* 77; 1 *Vez.* 225; 2 *Showers* 16; 2 *Mod.* 310. That the will was sufficiently proved to justify its submission to the jury, 6 *Serg. & Rawle*; 4 *Esp. Rep.* 37; 3 *Yeates* 515; 2 *Dal.* 96; *Conn. Rep.* 531; 1 *Pr. Wms.* 740; 2 *Saund. Plea. & Ev.* 932; 4 *Yeates* 79; Smith *v.* Sainsbury, 24 *Eng. Com. L. Rep.* 275; Rex *v.* Henry,

24 *Eng. Com. L. Rep.* 285; Beauchamp *v.* Cask, 14 *Eng. Com. L. Rep.* 410.

The opinion of the Court was delivered by

KENNEDY, J.  The paper purporting to be the last will and testament of Hugh M'Kelvy appears, not only from its face, but likewise from the evidence, to have been made before the late act of assembly, passed on the subject of wills in 1833–4; though M'-Kelvy is admitted to have died afterwards.  It is also admitted that the execution of the instrument must be judged of by the law as it stood at the time of its execution, and not at the time of the death of the testator.  In support of this latter admission, the following authorities have been cited by the counsel for the defendant in error: *Amb.* 550; 3 *Atk.* 551; 2 *Id.* 36; 1 *Eden.* 482; *Pre. in Chan.* 77; 1 *Freem.* 542; 1 *Vez.* 225. 33. 178; 2 *Show.* 16; *S. C.* 2 *Mod.* 310; 2 *Freem.* 466; 1 *P. Wms.* 97; 9 *Law. Lib.* containing *Vorhes on Stat.* 681; 2 *Vez.* 265; 4 *Id.* 555.

The only question discussed on the argument was, whether the evidence given on the trial amounted to proof, by *two* witnesses, of the execution of the writing by Hugh M'Kelvy as his last will and testament, in conformity to the act of 1705; so as to justify the court below in permitting it to go to the jury, to be determined by them, as a matter of fact, whether he had made and published it as such or not.

The act of 1705 " concerning the probates of written and nuncupative wills, and for confirming devises of land," being the only law in force on this subject at the time the writing in question was made, required that wills in order to render them available in passing lands should be in writing and proved by *two or more credible witnesses*.  In Eyster *v.* Young, 3 *Yeates* 515, however, it was held that circumstances might supply the want of one witness, where they go to the immediate act of disposition, so that it would not seem to be requisite that there should be literally *two* witnesses in every case, either of whose testimony would be sufficient to prove the execution of the will in case one witness were made so by law.  Still, however, whenever there are but two witnesses called to establish the will, each, in order to do so, must be able to testify to all that would be requisite, to warrant a jury in establishing it, were the proof of one witness only sufficient in law for such purpose.  This is the whole extent of the doctrine laid down in Hock *v.* Hock, 6 *Serg. & Rawle* 47, and Reynolds *v.* Reynolds, 16 *Serg. & Rawle* 82.  For there is nothing decided or laid down in either of those cases going to show that a will may not be proved by circumstantial evidence, where each circumstance composing the aggregate necessary to make up the sum of proof, is testified to by at least two witnesses, though the two witnesses proving each circumstance may not be the same.  It is doubtless necessary that the whole chain of circumstances should be proved by the testimony of two

[Mullen v. M'Kelvy.]

witnesses at least, but then each link of the chain may be proved by two witnesses who prove no other link of it. And, in this latter case, as the number of witnesses is increased, by producing two new witnesses to establish each link, the proof is thereby rather strengthened than weakened; for it is easy to perceive, that two witnesses may be more readily obtained to testify untruly from corrupt motives than twenty. Two may be procured for such purpose when no greater number can; and even if twenty could, the increase of number would most likely multiply the chances of detecting the fraud, and thus furnish some security against its success.

In the present case the execution of the writing by H. M'Kelvy, as his last will and testament, is testified to very fully by Mr Hamilton. This, indeed, is not denied, but admitted by the counsel for the plaintiff in error. But then, it is alleged, and has been strenuously argued, that neither the testimony of Isaac Walker, nor yet that of the other witnesses, taken in connection with his, is sufficient to supply the want of the testimony of a second witness. It therefore becomes necessary here to turn to the testimony. Walker testifies positively that he was called into Mr Hamilton's office to witness a writing which Hugh M'Kelvy acknowledged was his last will and testament; and that he subscribed his name as a witness to it; but whether the one in question be the same or not he does not know; cannot be positive that it is; says that the signature of his name looks pretty much like his handwriting, but cannot be positive whether it is his or not; it is like it; it may be his signature; it is something like his, and the paper something similar to the one he signed; though it does not appear to be so long; does not think M'Kelvy's signature was to the paper; does not think he put it down in his presence; looking at the paper again, he says he saw no such name to it as M'Kelvy's appeared to be then, but did not look at it for the purpose of examining whether there was a name to it or not. Now, whether this testimony of Walker would have been sufficient to have justified the court in submitting the fact of the execution of the will to the jury, to be determined by them, in case the law had made the proof of one witness sufficient for this purpose, may be a question about which there may possibly exist some diversity of opinion. In Garrells *v.* Alexander, 4 *Esp. Ca.* 37, Lord Kenyon is reported to have left the question of the defendant's handwriting to the jury on much less evidence than that of Walker. The witness there had never seen the defendant write, except in signing his name to the bail-bond taken in the suit; and being asked whether he *believed* the acceptance of the bill then in question to be the handwriting of the defendant, he said he could form *no belief* on the subject; but said it was *like* the handwriting in which the bail-bond was subscribed. He looked again on the bill, and said it was *like* the handwriting in which the defendant had subscribed the bail-bond; but he could not speak to any *belief* further than he had already done. Whereupon lord Kenyon said, he thought there was

[Mullen v. M'Kelvy.]

evidence to go to the jury; and that he was bound to leave it to them. Now there is certainly no difference between the evidence upon which it is proper to submit the execution of a will and that of any other instrument as a matter of fact to be decided by the jury, except that the proof of the execution of the will must be made by at least two witnesses, when one may be sufficient in other cases. This is the only particular in which the proof of the execution of a will is changed by the act of 1705, from what the rules of the common law would have required. Lewis *v.* Lewis, 6 *Serg. & Rawle* 496. But still it may be that lord Kenyon went too far in leaving the fact of the acceptance of the bill by the defendant to the jury, on the evidence there given. And lord Eldon, in Eagleton *v.* Kingston, 8 *Vez.* 475–6, doubts the authority of the case, and says, "that formerly, unless the witness would testify that he *believed* the writing to be of the person, it would not have been deemed evidence; saying that he thought it *like* it, was not sufficient." This would certainly seem to be the more rational rule. And, at first, I must confess that I was rather inclined to believe that the testimony of Walker here was insufficient, although it goes much farther towards proving the execution of the writing in question by M'Kelvy, than the evidence did in the case before lord Kenyon. I am now, however, upon a more thorough examination of Walker's testimony, taking all together, rather of the opinion, that it was sufficient to have made it the duty of the court to refer the fact of the execution to the jury, in case one witness only had been sufficient in law for that purpose. But the testimony of Mr Hamilton being full and complete as to the point of the execution of the writing, it was therefore correctly submitted by the court to the jury. For, although it is true, that Walker does not in terms testify, that he believes his name, to the instrument as a witness, to be his handwriting, yet I cannot avoid thinking that under the circumstances given in evidence by him, he has testified to what ought to be considered equivalent to it. Indeed I regard his testimony as proving the execution of the instrument by M'Kelvy, much more strongly and satisfactorily, than if it had been done by a subscribing witness, testifying merely to his *belief* of the handwriting being his own, who seemed to be so little acquainted with writing generally, as not to be very capable of distinguishing his own from an imitation of it merely, without his having any recollection whatever of his having ever witnessed such an instrument, or of the slightest circumstance connected with it. And yet it cannot be doubted, but such evidence would have made it the duty of the court to have left the fact of the execution to the jury. But here Walker recollects distinctly the fact of his having subscribed his name as a witness to an instrument of writing, which M'Kelvy acknowledged to be his last will and testament, somewhat similar to the present in appearance; and though he does not testify that he believes it to be the same, nor that he believes his name subscribed thereto as a witness, to be his handwri-

[Mullen v. M'Kelvy.]

ting, yet he says it is like his handwriting and *may be his*, but *cannot be positive* that it is, or is not; that he had seen his name written by other persons as near like his as that was; that it looked pretty much like his; and when *repeatedly* asked to say whether he believed it to be his signature or not, he still answered by saying, he could not be positive, and acknowledged that he had been taken into a tavern by the plaintiff, who there treated him to ale, and interrogated him as to what he knew of M'Kelvy's executing a will. His conduct was not unlike one who had been tampered with, and made from some cause at least an unwilling witness for the defendant. Indeed, the circumstance of his having been taken to a tavern and treated to ale by the plaintiff is very suspicious, to say the least of it; and no doubt had its weight with the court, in inclining it to leave the evidence and the writing to the jury with testimony less explicit and pointed, perhaps from the witness, than otherwise would have been proper. In Beauchamp *v.* Cash, 16 *Eng. Com. L. Rep.* 410; *S. C. Dowl. & Ry. N. P. Ca.* 3, where a witness to the handwriting of the defendant on his examination in chief, after much hesitation, stated that he *believed* it *was* the defendant's handwriting, but upon his cross examination, after several minutes, said that he *believed* it was *not*, and acknowledged that he was one of *defendant's bail* in the action; and upon re-examination he again hesitatingly stated that he *believed* it *was*, yet without any other evidence of the handwriting chief justice Abbot thought it was the province of the jury to decide on the credit and effect of the witness and his testimony. I, however, still think that generally a witness called to prove handwriting, whether it purport to be his own or that of another, if he professes to have any knowledge of the handwriting of the person, that he ought to be required to state distinctly whether he has formed, or is able to form any *belief* of its being or not being the handwriting it purports, or is alleged to be; and if he has formed or is capable of forming a belief in regard to it, to declare what it is. And if he be unwilling to do so, the court ought to compel him. For, generally, short of this, it cannot be said, that the testimony of the witness tends to prove any thing, much less the execution of the instrument. Admitting, however, the testimony of Walker, with that of Mr Hamilton, to be insufficient to justify the court in permitting the writing to go in evidence to the jury, still there is the additional testimony of other witnesses tending, as I conceive, to prove the identity and the execution of it by M'Kelvy. Henry Atkinson testifies to his knowledge of M'Kelvy's handwriting in his life-time, and that the writing in the name of M'Kelvy looks pretty much like his handwriting; *that it is the way he wrote.* James B. Morgan also says, that M'Kelvy the day before his death told him that he had made his will, *that lawyer Hamilton had it*; and when asked by the witness if he had made no other, he replied, *that was his last.* And again Jeremiah Frew testifies, that in May 1835, M'Kelvy told him that *he had made his will*, and had left

[Mullen v. M'Kelvy.]

Mullen, the plaintiff, *nothing*; which accords with the writing here produced as his will.

Upon the whole, taking all the testimony together, we are inclined to think that the court was right in permitting the writing in question to be read in evidence, and submitted to the jury.

Judgment affirmed.