# Carson's Appeal.

| 59 | 493 |
| 147 | 101 |
| 59 | 493 |
| 173 | 300 |

1. The "Wills Act" does not require that the witnesses to a will should be *subscribing* witnesses.

2. Circumstances may supply the want of one witness, when they go directly to the immediate act of disposition.

3. The execution of a will, signed by the testator's mark, was proved by one complete and competent subscribing witness. Another witness who had been sent for to witness it, did not subscribe because he could not write; he testified that he saw the testator execute a will which witness believed to be that offered for probate, that he thought the mark was the testator's; that he had no way to identify it but by the mark; that the paper looked like the paper signed, and that he never heard of his making another will. There was no contradictory evidence nor proof that the testator had made another will. *Held*, that the identity of the will was established and its execution proved by two competent witnesses.

4. The testimony of a witness who swears to the execution and identity of a will is not to be rejected as incompetent and insufficient because he is unable to designate any peculiarity in the signature or in the paper on which the will is written.

5. The execution of a will consists in signing as prescribed in the statute, with the intention and for the purpose of rendering it valid as the will of the signer.

November 16th 1868. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Register's Court of *Fayette county*: No. 175, to October and November Term 1868.

On the 1st day of May 1867 a writing, purporting to be the will of Thomas Carson, with a codicil, was presented to the register of wills of Fayette county for probate. The will was dated December 5th 1860, and was signed by the testator, by his mark, and witnessed by John Carson and J. K. McDonald. John Carson was a legatee under the will. One of the provisions of the will was, that the testator's real estate should be appraised, and that his sons should have the privilege of taking it at the appraisement, beginning with the eldest. The codicil was dated January 7th 1865, and was witnessed by J. K. McDonald and Samuel A. Carson, a legatee. By the codicil, he directed that his son John should have the privilege of taking a farm on which he lived at the appraisement, but not all the testator's real estate.

Before the register, McDonald and John and Samuel A. Carson made the usual attestation to the execution of the will. The register's certificate of probate further stated, that Thompson had testified that "he was personally present, and saw the testator, Thomas Carson, sign and seal, by making his mark to the foregoing instrument of writing, purporting to be his last will and testament, when of sound and disposing mind; heard him declare the same to be his last will and testament, and saw the witnesses, John Carson and J. K. McDonald, sign the same in the presence

[Carson's Appeal.]

of the testator, and knew of no undue influence used in making said will;" * * and that Nancy Hutton had testified, that "she was present, and saw the testator sign and seal the codicil to the foregoing will by making his mark, and heard him declare the same to be part and parcel of his last will and testament, when of sound mind; saw the subscribing witnesses, J. K. McDonald and Samuel A. Carson, sign in the presence of the testator; knew of no undue influence used, or later will or codicil made."

The will and codicil were thereupon admitted to probate.

Abraham Carson, one of the sons of the testator, appealed to the Register's Court from the decree of the register.

Before the Register's Court, Robert Thompson, the original will being shown to him, testified: "I think the mark is the mark of Thomas Carson; there is no other way by which I can identify the will except by the mark; another reason was, that I never knew of him making any other will, nor ever heard of him making any other; I cannot read writing; when he signed the will it looked like it now does; I will not say positively that I saw Squire McDonald sign the will as a witness; I do not remember seeing him sign as a witness; I cannot write."

On cross-examination, he said:

"I believe I was sent for to witness the will; James Carson asked me to go over to the old man Carson's house; he did not say what he wanted; when we got over, I believe they told me what they wanted with me; the reason I did not sign as a subscribing witness was, because I cannot write my name; John Carson signed it, I think; I could not recognise John Carson's writing if I saw it; I saw him sign his name to it; Squire McDonald was there. I think, to the best of my recollection, the will was written when I went; some of it might have been written after I went; I do not recollect of any of it having been written after I went."

In answer to this question by the court:

"Is there anything in the character of the mark purporting to be the mark of the testator, which enables you now to say that that is the mark you saw the testator make?" He said, "I cannot say positively that there is."

He was further asked:

"Do you recognise this as the will, from its general appearance, to be the will that was executed by Thomas Carson as his will, in your presence?" He answered: "To the best of my knowledge I believe it to be the same paper from the general appearance and mark; I believe it to be the same paper." Also, "What is there peculiar about this paper that makes you think that it is the same paper you saw the testator sign?" He answered: "Because the mark resembles the mark he made, and the paper resembles the paper he signed; and I never heard or knew of him making any

other will, except some alteration or addition to it; there is nothing else by which I would know it than what I have said; I do not remember that I have seen the testator make his mark frequently; I cannot say positively that I ever saw him make his mark before, nor that I did not; I did not hear the will read."

Nancy Hutton testified:—

"I can neither read nor write, nor read writing; this is the codicil that I saw Thomas Carson sign."

The court having asked her—

"Show us the mark that you saw the testator make;" she said: "I cannot find it." Also: "How do you know that that is the will that Thomas Carson signed?" She said: "I know it is the will that Thomas Carson signed; there is something peculiar about it that makes me recognise it." Also: "What is there peculiar about it that makes you recognise it?" She pointed to something in the probate as peculiar; "I heard part of the will read; I heard that part that states that John is to take the place at the appraisement; I saw McDonald sign the will; I do not remember what I heard read. I knew that J. K. McDonald wrote the will and codicil; John K. McDonald was there when Thomas Carson made his mark; Samuel A. Carson also signed as a witness. I saw J. K. McDonald write the will; I was present when it was written; I was in the room when it was written; it was written in the daytime; it was all written in one day; I knew that the old man was making his will, for he told me so."

J. K. McDonald testified:—

"I wrote the will and codicil of Thomas Carson; this is the one I wrote; John Carson and myself signed as witnesses; Robert Thompson was sent for to be a witness to the will; I could not say positively that Robert Thompson was present when Thomas Carson made his mark; I think he was sitting in the room; Thomas Carson declared it to be his last will and testament; I took the will home with me, and had it in my possession ever since, until it was brought to be probated; I wrote the codicil, and signed it as a witness; Samuel A. Carson signed it as a witness; Mrs. Hutton lives about the house; she was in and out of the room while I was writing it; cannot say that she was present when it was signed; there was no other will written that I know of; I never heard of there being any other."

"I do not know that there was no other will made; I am satisfied that there was none written since this; I know there was no other will made, from my intimacy with the testator, and doing business for him, and hearing him talk about the will in my possession; the will was written about seven years before the testator's death; I live about one mile and a half from the testator."

The Register's Court (Gilmore, President of the Court of Common Pleas, delivering the opinion) reversed the decree of the regis-

ter, decreed that the will had not been legally proved, and that the probate be cancelled. David Carson and other children and legatees of the testator appealed to the Supreme Court, and assigned the decree of the Register's Court for error.

*A. Howell,* for appellant.—McDonald was a complete witness, and the circumstances going to the immediate act of disposition, supply the want of another: Eyster *v.* Young, 3 Yeates 511.

*C. E. Boyle* (with whom was *J. Fuller*), for appellee.—Each witness must be competent to the whole proof: Hock *v.* Hock, 6 S. & R. 47.

The opinion of the court was delivered, January 4th 1869, by

WILLIAMS, J.—The Act of the 8th of April 1833 expressly provides that " every will shall be in writing, * * * * and in all cases shall be proved by the oaths or affirmations of two or more competent witnesses; otherwise, such will shall have no effect." But the act does not require, nor is it necessary that they should be subscribing witnesses; and it has been ruled that circumstances may supply the want of one witness, when they go directly to the immediate act of disposition: Jones *v.* Murphy, 8 W. & S. 295.

In the case before us Thomas Carson executed the will, which was admitted to probate by the register, by signing the same with his mark or cross, and declaring it to be his will in the presence of John Carson, J. K. McDonald and Robert Thompson; and in the same way he executed the codicil thereto in the presence of J. K. McDonald, Samuel A. Carson and Nancy Hutton. John Carson and J. K. McDonald were subscribing witnesses to the will, and J. K. McDonald and Samuel A. Carson were subscribing witnesses to the codicil. Robert Thompson and Nancy Hutton could not read nor write, and neither of them signed as a subscribing witness. John Carson and Samuel A. Carson, being devisees, were not competent witnesses to prove the execution of the will or codicil, and consequently their testimony as taken before the register must be set aside.

Were the will and codicil then proved by two competent witnesses, or by one competent witness and circumstances equivalent to another, going directly to the immediate act of disposition?

It is admitted that John K. McDonald was not only a competent but a complete witness; and that his testimony, if the statute required but one witness, would fully establish the due execution of the will and codicil. He was the scrivener that wrote them both, and, as he testifies, saw Thomas Carson, when of sound mind, sign them by making his mark; heard him declare them to

[Carson's Appeal.]

be his will, and signed them both as a subscribing witness at his request.

Robert Thompson was also a competent witness, and if a complete witness to establish the will, then its execution was duly proved. He was sent for to witness its execution, but did not sign as a subscribing witness for the reason that he could not write. But the will was executed in his presence, and, as he testified before the register, he saw the testator (Thomas Carson) sign it by making his mark, when of sound and disposing mind, and heard him declare it to be his last will and testament. What more could he have said to prove its due execution?·

The learned president of the Register's Court admits that " the evidence of Thompson, as it appears in the probate, would be sufficient," and says: " He there swears to all the requisites of execution; but when he is examined before the court, it is evident his oath was in answer to the usual questions put by the register, and that his attention was not particularly called to the identification of the will." And because Thompson, in his examination before the court, could not positively say that there was anything in the character of the mark, purporting to be the mark of the testator, which enabled him to say that it was the mark which he saw the testator make, nor that there was anything peculiar in the paper upon which the will was written to distinguish it from any other writing-paper of the same kind, the court regarded his testimony as insufficient, and set it aside on the ground that he had failed to identify the will as the one he saw Thomas Carson execute.

The whole question in this case hinges on the identity of the will. If Thompson did not fail to identify the will, he was a complete witness to prove it, and his testimony fully establishes its due execution. Did he then fail to identify the will? And if not, was he mistaken in regard to its identity?

Let us examine the evidence and see what answer it will give to these questions.

In his testimony before the court, the will being shown to him, he said: " I think that is the mark of Thomas Carson." The will being shown him again, he said: " I think the mark is the mark of Thomas Carson. There is no other way by which I can identify the will except by the mark. * * Another reason is that I never knew of him making any other will, nor ever heard of him making any other. I cannot read writing. When he signed the will it looked like it now does."

In answer to the question, Do you recognise this as the will, from its general appearance, to be the will that was executed by Thomas Carson as his will, in your presence? he said, " To the best of my knowledge, I believe it to be the same paper; from the general appearance and mark I believe it to be the same paper."

9 P. F. SMITH—32

[Carson's Appeal.]

He was then asked, What is there peculiar about this paper (the will being shown) that makes you think that it is the same paper you saw the testator sign? and he answered: "Because the mark resembles the mark he made, and the paper resembles the paper he signed; and I never heard or knew of him making any other will, except some alteration or addition to it. There is nothing else by which I would know it than what I have said."

Here we have the direct and positive averment of his belief, and the evidence or ground on which it was based, that it was the same paper which he saw the testator sign; and his testimony, if true, is sufficient in law to establish its identity. But he may have been mistaken in believing and declaring it to be the same paper; and if so, his testimony must be disregarded—not for the reason that it is legally insufficient, but because it is unworthy of credit. Was he, then, mistaken? His testimony is not contradicted, and it is consistent with all the evidence. He testifies to facts which, taken in connection with the testimony of McDonald, tends to show that he was not mistaken in believing it was the very paper which he saw Thomas Carson execute as his will.

He says: "I will not say positively that I saw 'Squire McDonald sign the will as a witness. I do not remember seeing him sign as a witness. * * * I believe I was sent for to witness the will. James Carson asked me to go over to the old man Carson's house. He did not say what he wanted. When we got over I believe they told me what they wanted with me. The reason I did not sign as a subscribing witness was because I cannot write my name. John Carson signed it, I think. I could not recognise John Carson's writing if I saw it. · I saw him sign his name to it. 'Squire McDonald was there." Let us, then, place McDonald's testimony alongside of Thompson's. He says: "I wrote the will and codicil of Thomas Carson. (The will shown.) This is the one I wrote. John Carson and myself signed as witnesses. Robert Thompson was sent for to be a witness to the will. I could not positively say that Robert Thompson was present when Thomas Carson made his mark. I think he was sitting in the room. Thomas Carson declared it to be his last will and testament. I took the will home with me, and had it in my possession ever since, until it was brought to be probated. I wrote the codicil and signed it as a witness. * * * There was no other will written that I know of. I never heard of there being any other." And in his testimony before the register, he says that he and John Carson "were personally present and saw the testator, Thomas Carson, sign and seal the will by making his mark."

Now, can there be a reasonable doubt that the will produced in court and shown to Thompson, was the identical will which he saw Thomas Carson execute? The proof of its identity does not depend upon the mere belief of the witness that it was the same

paper, "from the general appearance and mark," and "because the mark resembles the mark he made, and the paper resembles the paper he signed." But there are strong corroborating circumstances tending to show that he was not mistaken in regard to its identity, and which leave no room for doubt or uncertainty in regard to the fact. An analysis and comparison of the testimony will make this evident.

Thompson testifies that he was called to witness the execution of the will which he saw Thomas Carson execute, and which he believed to be the will produced in court. McDonald proves that Thompson was called to witness the will produced in court, which he identified as the one he saw Thomas Carson execute.

Thompson testifies that Thomas Carson executed the will which he was called to witness, and which he believed to be the one produced in court, in the presence of John Carson, 'Squire McDonald and himself, and that John Carson signed it as a subscribing witness, but he does not remember seeing McDonald sign it as a witness, though he was there.

McDonald proves that he and John Carson were present when Thomas Carson executed the will produced in court and identified by Thompson, and that he and John Carson signed it as subscribing witnesses; and though he could not positively say that Thompson was present, he thought he was sitting in the room.

Thompson testifies that he never heard or knew of Thomas Carson making any other will, except some alteration or addition to it. McDonald proves that he took the will home with him, and had it in his possession until it was brought to be probated; that he wrote the codicil, and that there was no other will written that he knew of, and that he never heard of there being any other.

Now, when it is not shown or even alleged that Thomas Carson ever made any other will, is it not as clearly proved as any fact can be, that the will produced in court was the identical will which Thompson saw Thomas Carson execute, and which he heard him declare to be his will? What matters it, if, in answer to the question—"Is there anything in the character of the mark, purporting to be the mark of the testator, which enables you now to say that that is the mark you saw the testator make?" He replied, "I cannot say positively that there is."

Is his whole testimony to be set aside and pronounced insufficient in law to establish the will, because he could not point out anything peculiar or characteristic in the mark which the testator made, or anything in the paper upon which it was written to distinguish it from other paper of the same kind? The testimony of a witness who swears to the execution and identity of a will is not to be rejected as incompetent and insufficient in law, because he is unable to designate any peculiarity in the testator's

[Carson's Appeal.]

mark or signature, or in the paper upon which the will is written. There may be nothing peculiar in the mark or paper, and yet the witness, from the general appearance of the instrument and its likeness, in all respects, to the one he saw executed, may have no doubt as to its identity, and be able to swear that it is the same paper. It is true that his testimony may be disbelieved if he is not trustworthy, or if the facts and circumstances of the case show that he is mistaken. But his testimony cannot be set aside as legally incompetent or insufficient to establish the identity of the will. The legal sufficiency of testimony must not be confounded with its credibility. The one involves a question of law, the other a question of fact.

The testimony of a witness may be legally sufficient, but not credible; or, it may be credible, and not legally sufficient. In our opinion the testimony of Robert Thompson answers both of these requisites; it was not only legally sufficient, but entitled to credence. He swears to the identity of the will, and all the facts and circumstances of the case show that he was not mistaken. Its identity, therefore, was clearly established, and its execution was proved by two competent witnesses, "each of whom make complete proof in itself, so that if the Act of Assembly were out of the question, the case would be well made out by the testimony of either."

It only remains to consider the sufficiency of the proof as to the execution of the codicil. And the main question is as to its identity. McDonald, as we have seen, proves its execution; and so does Nancy Hutton, if she was not mistaken as to the identity of the paper. When affirmed before the register, she said she was present and saw the testator sign the codicil to the will by making his mark, and heard him declare it, when of sound mind, to be part and parcel of his last will. And when the will was shown to her in court she said: "This is the codicil that I saw Thomas Carson sign."

Was she mistaken in believing and declaring it to be the same paper? She may have given unsatisfactory or absurd reasons for her belief in its identity, but if all the facts and circumstances of the case show that she was not mistaken in declaring it to be the same paper that she saw Thomas Carson sign, why should her testimony be rejected as insufficient to prove its execution?

What, then, are the facts and circumstances as disclosed by the evidence which tend to show that it was the same paper?

She testifies that she saw Thomas Carson sign the codicil by making his mark, and that she saw the subscribing witnesses, J. K. McDonald and Samuel A. Carson, sign it in his presence. McDonald proves that Thomas Carson signed the codicil produced in court in the presence of himself and Samuel A. Carson, and that they signed it as subscribing witnesses in his presence.

[Carson's Appeal.]

She testifies that she heard the will read; that she heard that part that states that John is to take the place at the appraisement. The codicil produced and identified by her contains such a clause:

She testifies that she saw McDonald write the will; that she was in the room when it was written. McDonald proves that he wrote the codicil produced and shown to her, and that she was in and out of the room while he was writing it, but he could not say that she was present when it was signed.

Now, when we add to these corroborating circumstances McDonald's statement that the will was in his possession from the time of its execution until it was brought to be probated; and that there was no other will written that he knew of; that he never heard of there being any other; and from his intimacy with the testator, and doing business for him and hearing him talk about the will in his (McDonald's) possession, he knew there was no other will made, can there be a doubt that the paper shown to the witness in court was the very paper which she saw Thomas Carson sign by making his mark?

Scepticism as to its identity ought to have some better foundation on which to rest than the inability of the witness, who could neither read nor write, to point out the mark which she 'saw the testator make, and pointing to something in the probate as peculiar which enabled her to recognise the paper. The evidence, we think, fully establishes the identity of the codicil as the one she saw Thomas Carson execute, and heard him declare to be part of his will.

If there be any room for doubt in this case it is as to the sufficiency of the proof of its execution. And the doubt arises from the inability of the witness to point out the mark she saw the testator make.

Was it necessary that she should be able to do this in order to make full and complete proof of the execution of the codicil? Her testimony might have been more satisfactory if she had been able to designate the mark. But was it absolutely essential to the proof of the instrument that she should do this? She must prove the codicil—that is, she must prove its due execution—otherwise her testimony must be set aside as of no value. But the execution of a will, or other testamentary writing, consists in the act of signing it, in the mode prescribed by the statute, with the intention and for the purpose of rendering it valid and operative as the will of the person signing, or by whose direction and in whose presence it is signed. The act and fact of signing with such intention give to the testamentary writing its validity and character as a will; and proof of the signing with such intention is proof of the will, and of its due execution.

In this case Nancy Hutton not only proves the act and fact of signing, but she proves the intention and purpose with which it

was done. She might have signed as a subscribing witness by making her mark, as the authorities show; and if she had, would her testimony be rejected and set aside as insufficient, because she could not point out or identify the mark which she saw the testator make?

She swears positively that she saw him sign the codicil by making his mark, and heard him declare it to be part of his will; and the paper, which she identified as the codicil, shows on its face what purports, and is proved by McDonald, to be the testator's mark. Inability to point out the mark did not blot out of her memory the fact that she saw the testator sign the paper by making his mark, and heard him declare it to be part of his will; nor should it render inoperative or make void her testimony as to the fact.

The will and codicil, then, were duly proved and rightly admitted to probate by the register, and the decree of the Register's Court cancelling and making null and void the probate must be reversed.

> The decree of the Register's Court is reversed, and the probate of the register is confirmed.
>
> It is also ordered and decreed that the costs of this appeal be paid by Abraham Carson, the appellee.

SHARSWOOD, J.—I concur in this judgment; but I dissent from some of the grounds on which it is placed in the opinion of the court.

The Statute of Wills requires two witnesses. The rule as laid down by Gibson, C. J., in Hock *v.* Hock, 6 S. & R. 47, is that each of the witnesses must depose to all facts necessary to complete the chain of evidence, in order that no link in it may depend on the credibility of but one; so that if one witness only was required, the will would be fully proved by the testimony of either. Where the evidence of one or both is circumstantial, each must make proof complete in itself, so that if the Act of Assembly were out of the question, the case would be well made out by the evidence of either. Circumstantial proof cannot, therefore, be made by two or more witnesses alternating with each other, as to the different parts of the aggregate of circumstances, which are to make up the necessary sum of proof; the evidence of each not going to the whole. This rule has never been questioned, but affirmed and adhered to in many subsequent cases: Reynolds *v.* Reynolds, 16 S. & R. 88; Rohrer *v.* Stehman, 1 Watts 458; Mullen *v.* McKelvy, 5 Watts 399; Ginder *v.* Farnum, 10 Barr 100.

It is conceded on all hands that John K. McDonald was a complete and sufficient witness to the execution of the will and codicil. In order to ascertain whether the evidence of the other witnesses was

also complete and sufficient, the testimony of McDonald must be considered as stricken out. If any part of his testimony, circumstantial or otherwise, is needed to make the remaining evidence amount to complete proof, the case will evidently depend on his credibility alone, and the requirement of the statute will thus be set at nought. The proof shall not depend upon the credibility of one witness, says in effect the statute. But if McDonald is not credible, on the assumption that his evidence is necessary to support the second witness, or what shall amount to the second witness—there can in no sense be said to be one full witness besides. I cannot agree therefore that if, in addition to direct proof of the very act of execution, a witness testifies to other circumstances, those circumstances can be taken into consideration in order to eke out the case as made by the remaining evidence. Permitting circumstances to supply the place of one witness has been regretted as a relaxation of the salutary rule prescribed by the act. Per Rogers, J., in Reynolds v. Reynolds, 16 S. & R. 86: but it may be defended as it has been ably done by Kennedy, J., in Mullen v. McKelvy, 5 Watts 401. "It is doubtless necessary," says he, "that the whole chain of circumstances should be proved by the testimony of two witnesses at least; but then each link of the chain may be proved by two witnesses, who prove no other link of it. And in this latter case, as the number of witnesses is increased, by producing two new witnesses to establish each link, the proof is thereby rather strengthened than weakened; for it is easy to perceive that two witnesses may be more readily obtained to testify untruly from corrupt motives than twenty." It may be said indeed that though the courts have departed from the letter of the statute in allowing circumstances to supply the place of witnesses to the immediate act of testamentary disposition, they have still maintained its spirit, by strictly insisting upon duplicated common-law proof. But to relax this rule as now proposed would be a departure as well from the letter as the spirit of the statute, and to my mind tantamount to a judicial repeal of it.

Nor in my judgment is it necessary in this case in order to support the will. The testimony of Robert Thompson appears to me to be full and complete, taken in connection with the paper itself, without the assistance of any circumstances proved by McDonald. He testifies that he was present and saw the testator make his mark on the paper as his will; that McDonald and John Carson were present; that he saw John Carson sign his name to it. He believed the paper writing in question to be the same paper, and when asked the reason answered "because the mark resembles the mark he (the testator) made, and the paper resembles the paper he signed." Unfortunately, however, Thompson could neither read nor write, and the court below thought, because he was not able to point out any peculiarity in the mark or the paper, that he did

[Carson's Appeal.]

not sufficiently identify it. But all identification by a witness of a person or thing is necessarily an exercise of judgment: Best on Ev. 596. It comes after all to opinion or belief. "In the identification of persons," said Lord Wensleydale in Fryer *v.* Gathecole, 13 Jurist 542, "you compare in your mind the man you have seen with the man you see at the trial. The same rule belongs to every species of identification." The ability or inability of the witness to state or explain the grounds of his belief may strengthen or weaken his testimony, but does not destroy its primâ facie character. In the proof of handwriting the witness compares that before him with the exemplar in his mind—that which he has seen the party write, and then testifies to his belief that it is by the same person. It is everyday's practice to let a paper go to the jury as primâ facie proved on that belief alone; though he may be unable to point out any peculiarity in the writing, or give any other good reason for his opinion. Had the alleged will contradicted in any respect Thompson's testimony, it would no doubt have justified its rejection. But it entirely sustained him. It purported to be executed by Thomas Carson, the testator, by a mark, and to be attested and subscribed by the two persons who as he said were present, and one of whom he saw sign the paper as a witness. On this testimony, standing by itself, if the Act of Assembly were out of the question, I would have no doubt that the paper writing propounded as the last will of Thomas Carson was sufficiently identified and proved.

So as to the codicil, to the execution of which McDonald was also a complete witness. Nancy Hutton was present, and saw a paper executed as a codicil. She testifies that "this is the codicil that I saw Thomas Carson sign." It is true that when asked by the court to point out any peculiarity by which she could identify it, she indicated something on the probate annexed. This circumstance, if it stood alone, would undoubtedly shake her testimony. It probably arose from the confusion common to her sex in the unusual position of a witness in court. But she added that she heard part of the will read—that part which states that John is to take the place at the appraisement—that she saw McDonald sign the will, and also Samuel A. Carson. The alleged codicil confirms her evidence in all these particulars.

It appears to me, therefore, that both the alleged will and codicil would have been sufficiently proved if the Act of Assembly were out of the question, without reference to any part of the testimony of John K. McDonald; and for this reason I concur in the judgment reversing the decree of the Register's Court appealed from, and confirming the probate thereof by the register as the last will and testament of Thomas Carson, deceased.

AGNEW, J.—I concur in this opinion.