[File No. 6735.]

## IN THE MATTER OF THE ESTATE OF ROBERT J. McKEE, Deceased.

WILLIAM McKEE, Jr., Durell McKee, Robert McKee, Jr., John McKee, Thomas McKee, Louis Rhodes as Guardian of the Person and Estate of Sam McKee, an Incompetent Person, George Mc-Kee, Elsie McKee, Pearl McKee, E. C. Musser, as Guardian of the Person and Estate of Nancy MeKee Hill, an Incompetent Person, Grace Estabrook Oakes, Ruth Estabrook Penoff, Paul Estabrook, Gertrude Estabrook, Mrs. Otto V. Estabrook Kinberg, and Mark E. Estabrook, Appellants, v. C. S BUCK, Jr., as Acting Executor of the Alleged Last Will and Testament of Robert J. McKee, Deceased, and Earl A. Reed, the Duly Appointed Representative of Anna J. McKee (Now Deceased), Respondents.

(4 NW(2d) 652.)

Opinion filed June 12, 1942. Rehearing denied July 8, 1942.

*Fredricks & Fredricks,* for appellants.
*G. S. Buck, Jr.,* for respondents.

NUESSLE, J. This is a proceeding to contest a will after probate on the ground of newly discovered evidence. The case is no stranger in this court. For its previous history, see 70 ND 66, 291 NW 693. Pursuant to the mandate of this court therein pronounced, the case was sent back to the county court of Stutsman county, where the contest was heard. The county court sustained the will. Thereupon, an appeal was taken to the district court and there the order of the county court was affirmed. Contestants then perfected the instant appeal.

It is enough now to say that Robert J. McKee, the testator, lived at Millarton. In April, 1934, he was stricken with paralysis. He was taken by Pryor, a neighbor, to the latter's house. McKee, realizing that he was very ill, directed Pryor to call an attorney from Jamestown in order that he might make a will. In response to this summons the respondent Buck came, and the instrument here in question was drawn. McKee was very weak. He could talk only with great difficulty. Buck talked to him for some time, ascertained that he wanted his will drawn, and made inquiries as to how he wished his property to be disposed of. The will was drawn on a typewriter. A printed form was used. One George, who was employed in Buck's office, came with the latter and did the typing. When this was done McKee was exhausted. Accord-

ingly he was permitted to rest for some time. Then Buck read the will to him. McKee approved of it as drawn and declared the same to be his last will and testament. Buck inquired of McKee as to whether he could sign the will and he thought he could. He was propped up in bed, a board was placed on his lap, the will was laid thereon, and Mc-Kee was given a pencil or pen. He was unable to write his name however. Accordingly, Buck told him that if he could not write he could sign by mark if he wished to do so. Buck made a cross, designating the place where the mark should be placed, and a pencil was then placed in McKee's hand, and assisted and guided by George, he made an undecipherable scrawl at the place indicated. Buck then wrote "Robert McKee, His Mark, about the mark, thus:

His
"Robert    X    McKee"
Mark

Buck, however, did not write his own name as a witness. Thereafter, Buck inquired of McKee if he wished George and Pryor to sign as witnesses to the will. McKee either said yes or nodded his head affirmatively. George and Pryor were present when all of this took place. They then signed the instrument as witnesses, using the printed form, reciting:

"The above instrument, consisting of one sheet, was now here subscribed by *making his mark*, Robert J. McKee, the testator in the presence of each of us, and was at the same time declared by him to be his Last Will and Testament, and we, at his request, sign our names hereto in his *and in the presence of each other* presence as attesting witnesses.

"Theo E. George of Jamestown, N. D.

"C. E. Pryor, of Millarton."

The portions italicized were written by Buck in the printed form with pen and ink. Thereafter McKee was removed to a hospital at Jamestown. He died within the next day or two.

After McKee's death the will was presented for probate. Contest was filed by certain of the heirs of McKee. After a trial of this contest the will was allowed in probate. Thereafter the present contestants instituted the instant proceeding to contest after probate. They set up

in their petition that they had discovered certain evidence which had not come to their knowledge before, tending to show that McKee, at the time of the execution of the alleged will, had no testamentary capacity, and that the instrument was not executed in accordance with the statutory requirements.

On the trial of the contest the only ground relied on was that there was no proper execution of the purported will and, therefore, no will. As to whether or not this is so is the sole matter for determination on this appeal. The attack is on the sufficiency of the testator's signature. The contention is, that under § 5649, Comp. Laws 1913, a will cannot be subscribed by mark; that if it can be subscribed by mark, such subscription must be in accordance with the provisions of § 7309, Comp. Laws 1913, and that, in the instant case, when the words "Robert Mc-Kee, His Mark" were written by Buck, Buck did not write his own name as a witness, and so there was no signature to the will.

Section 5649, supra, is a part of chapter 52 of the Civil Code, which is headed "Wills," and provides, among other things: "Every will . . . must be executed and attested as follows: 1. It must be subscribed at the end thereof by the testator himself, or some person in his presence and by his direction must subscribe his name thereto."

Section 7309, supra, also a part of the Civil Code is included in chapter 115 thereof, which is headed "Definitions and General Provisions." It reads, so far as is pertinent here:

". . . 'signature' or 'subscription' includes mark, when the person cannot write, his name being written near it and written by a person who writes his own name as a witness. The following words also have signification attached to them in this section, unless otherwise apparent from the context:

"4. The word 'will' includes codicils."

It is beyond dispute that the disposition of the property of a decedent is subject absolutely to the control of the statute and that a failure to comply with the statutory mandate as to the execution of a will is fatal to its validity. Montague v. Street, 59 ND 618, 231 NW 728, and cases cited; Re Taylor, 39 SD 608, 165 NW 1079.

In the instant case, appellants' first contention is that under the pro-

visions of § 5649, supra, a will is not properly executed unless it is signed at the end thereof by the testator himself, or some person in his presence and by his direction subscribes his name thereto; in other words, that where only a mark is made by the testator and the instrument is not signed for him by another, there is no subscription or signature within the requirements of the statute. Here, though the name Robert McKee was written by Buck, it was written by him of his own volition and to identify the mark made by McKee. McKee gave no direction that his name be thus written. So appellants say there is no valid will.

We think the contention thus advanced by appellants cannot be sustained. Under the authorities a mark made by one intending by making it to execute a will is sufficient as the maker's signature in the absence of a statute requiring more than the mere making of such a mark. This has been the holding without exception where the question has arisen under statutes such as § 5649, supra. It is the English rule under such a statute, see Jarman on Wills, 7th ed, p. 95 et seq, and was generally the holding in the American jurisdictions prior to the enactment of statutes identical with or to the same effect as § 7309, supra. See Mueller's Will, 188 Wis 183, 205 NW 814, 42 ALR 951, and authorities cited therein, and in the appended note; Kimmel's Estate, 278 Pa 435, 123 A 405, 31 ALR 678 and note; Rosato's Estate, 322 Pa 229, 185 A 197, 114 ALR 1108 and note; Re Arcowsky, 171 Misc 41, 11 NYS (2d) 853; Re Fox, 175 Misc 955, 25 NYS (2d) 854. So, in the instant case, were it not for § 7309, there can be no question but that the mark made by McKee, under the circumstances shown, would be held to be a sufficient signature and the will sustained.

Appellants next contend that if a mark made by a testator is relied upon as his signature then, pursuant to § 7309, supra, his name must be written near the mark by a person who writes his own name as a witness. So, in the instant case, since Buck, who wrote McKee's name near the mark made by him, did not write his own name as a witness, there is no signature sufficient to meet the requirements of the statute. Appellants' argument in support of this contention is of much force. But, after a careful consideration of the matter and a meticulous examination of the authorities, we have arrived at the conclusion that the

ruling of the district court from which this appeal was taken is right. It is true that challenges similar to that made by the appellants to the sufficiency of signatures to wills have been considered and sustained in other jurisdictions. In that behalf, appellants rely upon and cite, Citizens' Bank v. Strickland, 71 Okla 136, 175 P 506; Ballow v. Collins, 139 Ala 543, 36 So 712; Houston v. State, 114 Ala 15, 21 So 813. These authorities, and there are cases to the same effect in other jurisdictions, tend to sustain appellants' position. But there are authorities to the contrary and we are of the opinion that they announce the better rule. In some of the cases it is hard to determine exactly the point on which the case turns. Such a case is Re Guilfoyle, 96 Cal 598, 31 P 553, 22 LRA 370, where the statutes involved were identical with §§ 5649 and 7309, supra. The facts in that case are stated by the court as follows:

"Said will is in pencil, and barely covers a single page of small note paper. It is in the words and figures following, to wit:

" 'August 29, 1891. I, Bridget Guilfoyle, leave $500 (five hundred dollars) for masses at St. Patrick; also want a nice funeral, and all other expenses to be paid from what I leave, and the rest to my two nieces, Maria and Aggie Johnson, equally.

X

" 'Witnesses: Ellen O'Connor.    Emma Endres, Mary Daly.'

"The will was written by the witness Emma Endres, at the request of the deceased. After it was written, the witness Emma Endres read the will to the deceased in the presence of the other subscribing witness. The deceased was then asked whether that was her will. The deceased answered that it was. She was then given a pen by the witness Emma Endres. The deceased knew how to write her name but was physically too weak to do so. She made a cross at the end of the paper, and declared that such paper was her last will, and requested the said Emma Endres, Mary Daly, and Ellen O'Connor to sign the same as witnesses thereto."

It is to be observed that in this case the only place where the name of the testatrix was written was in the first line of the proffered will. There was no direction by the testatrix that her name be subscribed by the person who wrote out the will. After it was written the testatrix,

who through physical incapacity was unable to write, affixed her mark to it and requested the person who wrote the will and two others to sign as witnesses, which they did. Clearly, when Endres who wrote the will, signed, she signed not as a witness pursuant to the requirements of § 7309, but as a witness to the will at the request of the testatrix. Thus, on the facts, the case is practically identical with the instant case. And the court held the mark to be a sufficient signature and the will good. See also in this connection, Toomes's Estate, 54 Cal 509; Tolman v. Smith, 74 Cal 345, 16 P 189; Re Dombrowski, 163 Cal 290, 125 P 233.

It seems to us that when that portion of § 7309 with which we are here concerned was enacted, its purpose was to safeguard signatures by mark. It made a signature by mark thus witnessed prima facie of the same worth as a signature by writing. But it did not exclude other proof of a signature by mark alone. So, where a will or other writing is offered and the signature thereto is by mark, witnessed as provided in the statute, no further proof is required that the mark is the maker's signature unless that fact is challenged. And where he who writes the name of the maker to identify his mark fails to write his own name as a witness, the effect of his failure is not to destroy the signature thus made by mark but to place in the first instance the burden of proving that the mark was, in fact, made as the maker's signature, upon the proponent of the writing so subscribed.

It is conceded that the provisions of § 7309 are as applicable to other written instruments as they are to wills. In Vanover v. Murphy, 12 Ky L Rep 733, 15 SW 61, where suit was brought on a note signed by mark, but not attested by any witness, it was held that if the mark were in fact made by the obligor, and so proved, its validity as a written obligation necessarily followed. The statute in that case was identical with § 7309. The court said, in disposing of the matter, "This note is not attested, but if the mark was really made by the obligor and proven, its validity as a written obligation necessarily follows. In the one case it proves itself, if the plea of non est factum is not made, and when there is no attesting witness, other proof will be required of its execution. It is true that the plea of non est factum places the burden on the obligee whenever a signature made in either mode is denied; but the mere presentation of a note with a mark only is not evidence of its validity,

unless attested, as directed by the Code; but when proven to have been made, is as valid as any other signature."

And in Ex parte Miller, 49 Ark 18, 3 SW 883, 4 Am St Rep 17, a petition for prohibition of the sale of intoxicating liquors was presented to the county court. Some of the signatures thereto were by mark, not attested by any witnesses. On hearing in the circuit court the petitioners tendered evidence to prove these signatures were genuine and that the persons who wrote the names of the signers by mark were thereunto properly authorized. But the court refused to permit such testimony. On appeal it was held that the proposed evidence was competent, the court holding: "The mark of one who cannot write is not prima facie a signature unless the person who writes the name writes his own name as a witness to it. But it may be proven as genuine by other testimony, though there be no attesting witness to it."

And in Davis v. Semmes, 51 Ark 48, 9 SW 434, where the controlling statute was identical with § 7309, the court held that: "One may become an attesting witness to a will by making his mark, although the person who writes the name of the witness fails to attest that fact by signing his own name in accordance with (the statute) which defines 'signature' to include a 'mark' when the person cannot write, 'his name being written near it and witnessed by a person who writes his own name as a witness.' "

And the court said, considering the opinion in Ex parte Miller, supra: ". . . this provision of the statute was under consideration, and it was ruled that it did not mean that the signature of the person who wrote the name of the witness should be the exclusive evidence of the witness's signature. It was intended, as there explained, merely to put a signature by mark on the footing of a signature by writing, when made in accordance with the statute, and not to exclude other proof of the signature by mark."

And it seems to us that the reasoning of these cases is right.

Now in the instant case the only ground for challenge of the execution of McKee's will is that Buck failed to write his own name as a witness, not of the will, but of the making of the mark, he being the one who wrote the words "Robert McKee, His Mark." The witnesses to the will, George and Pryor, who were present when all was done with

respect to the writing and subscribing and witnessing of the will, testified as to the making of the mark. Buck himself testified to the same effect. There is no question therefore but that the mark was made by McKee who made it intending it as his signature. The requirement that the writer of McKee's name sign his own name as a witness to the mark, is merely for purposes of identification. To use the words of the court in Davis v. Semmes, supra, it was intended merely to put a signature by mark on the footing of a signature by writing and not to exclude other proof of the signature by mark. McKee was possessed of testamentory capacity. He wanted to execute a will. So he sent for Buck. The will was drawn embodying his wishes as to the disposition of his property. He was unable to write. So, at Buck's suggestion, in lieu of signing his name, he made his mark, intending it as his signature. Buck then wrote the words, "Robert McKee, His Mark," but failed to write his own name as a witness. The will as thus subscribed was witnessed as required by the statute. Judge Englert, who tried the case on appeal from the county court, found all these things to be well established by the evidence, and held that the will was good. We confirm those findings and we hold that Judge Englert's conclusions predicated thereon are correct.

Affirmed.

BURR, Ch. J., and BURKE, MORRIS, and CHRISTIANSON, JJ., concur.