## Long *versus* Zook.

An error in the testator's name of baptism, signed by a by-stander, to a will, made before the act of 1848, but consummated by the death after it, does not invalidate it, if the testators *mark* has been put to it with his own hand.

The will being made before the act of 1848, but the death of the testator occurring after, as no estate vested in the testator's life time, the case is within the remedial provision of that statute.

ERROR to the Common Pleas of *Bedford* county.

This was an issue of *devisavit vel non*, from the Register's Court of Bedford county, on an instrument of writing, purporting to be the last will and testament of David Long, deceased.

Jacob Long, plaintiff *vs.* Elias L. Zook.

August 30, 1849, jury called.

Plaintiff produces a paper purporting to be the will of *David* Long.

(Signed)　　　　　　　　　　his

JACOB ⋈ LONG. [SEAL.]

mark.

It was dated on the 26th December, 1844.

" Signed, sealed, published and declared by the above David Long to be his last will and testament, in the presence of the undersigned, who at his request and in his presence, have subscribed our names as witnesses thereto.

Witness, .　　　　　　JOHN H. KEYSER,

,ANDREW BAKER."

John H. Keyser, sworn :—This will was drawn by me ; drew it at David Long's house, in Woodberry township, in his presence and under his direction. My impression is that I wrote the will in separate parts, and read them to him as I went along, and when I had concluded, read the whole will to him. It was executed at the same time. Mr. David Long dictated what I wrote as I went along. It was executed by Mr. Long signing with his mark, as here, to the name of Jacob Long. *The name of Jacob Long was*

[Long *v.* Zook.]

*a mistake of mine entirely.* I could not believe I had made such a mistake until I saw it. He assented to the several parts as I went along. I do not know whether he could write or not at the time. They had a battery there and were operating on him at the time for paralysis. He was an old man and infirm. Don't remember anything being said at the time about his being able or not able to write, or why he made his mark. After the will was signed by the testator I signed as a witness.

\*    \*    \*    \*    \*    \*    \*    \*

Re-examined:—I have no distinct recollection of being asked to put testator's name to the will; nor to subscribe my own name to it.

Plaintiff's attorney asks witness if he would or would not have put the name of testator, or his own name, to the will without being requested by testator? Defendant's attorney objects to the question. The court admits the testimony and at instance of defendant seals bill of exceptions.

The witness answers in the negative, and says he would not have done either.

Andrew Baker, sworn:—I knew David Long for many years before his death. This (holding the paper in his hand) is my name subscribed as a witness to David Long's will, at his house. Keyser wrote the will and read it over. Long said he could not write, his arm was lame, *and asked Keyser to write his name.* He then made the mark with his left hand. When the will was read he said he was satisfied with it. I think he desired me to put my name to it as a witness; I know no one else did. He was of sound mind; never saw anything wrong about it. He had but one attack of palsy before the will was made. *He died in September,* 1848.

⋈ I was there when the will was executed. The old man said he was lame in his right hand; that Keyser would have to write his name; and he would make his mark with the left hand. Jacob Long did not talk about the will or its provisions. He did not ask me to sign the will as a witness. He went for me; somebody had to bring me for the old man could not. I did not say to Holsinger that I did not believe testator to have been in his sound mind.

Re-examined:—I would not have signed this will as a witness if any person else than *David* Long had asked me; nor would I have signed it without having been requested so to do.

The plaintiff here offered to read the will thus proved to the jury. The defendant objected, and the court rejected the will. The Plaintiff excepted and the Court sealed a bill of exceptions.— The Court instructed the Jury that as there was no evidence before them, their verdict must be for the defendant, and the Jury on the 31st August, 1849, rendered a verdict accordingly.

[Long *v.* Zook.]

A motion for a new trial was made; and on argument new trial refused. February 22, 1850. Judgment was entered on the verdict.

March 2, 1850.   Writ of error received and filed.

Errors assigned:

The court erred in rejecting the will as not proved.

The case was argued by *A. King*, for plaintiff in error.—That the mistake of the scrivener as to the Christian name of the testator, did not invalidate the will; he cited *Jarman on Wills* 101—putting a construction on the English act of 1837; *Worthington on Wills* 59; *Law Lib.* p. 260; *in re* James Clark, where a mistake was made as to the name of the testator; 1 *Story's Eq.* sections 152, 3, 5 and 166; 2 *Barr* 110; 4 *Vesey* 51; 6 *Bacon's Ab.* 155; *Id.* 16.

2. Supposing the mistake to be immaterial whether the will was sufficiently proved to be submitted to the jury; *Worthington on Wills* 261; 1 *Brock.* 127; 2 *W. C. C.* 274; 7 *W. & S.* 201; 5 *Blackford* 60; 3 *Taunton* 504; 5 *Johns.* 144; 17 *Pick.* 373; 1 *Metcalf* 349; 6 *Bingham* 310; 7 do. 457; 1 *Cromp. & Mees.* 140; *Strange* 764; *Doug.* 229.

3. Whether the execution of the will by the mark, if defective, is not cured by the act of 1848, which applies to wills *made before* its passage.   That till the death of the testator, his heirs had no *vested* interest in his estate.

*J. F. Cox*, contra.—He contended that parol evidence was not admissible to prove a writing, with the name of *Jacob* Long attached to it, to be the will of *David* Long.   He referred to Burwell *vs.* Corbin, 1 *Rand.* 131; 6 *Barr* 409; 5 *Barr* 21.

To 2d point of plaintiff in error, he observed; to *sign* does not mean to *write the name of the testator;* 5 *S. & R.* 21; and Greenough *vs.* Greenough, not yet reported.

To 3rd point, he refers to Greenough *vs.* Greenough; that the act of 1848 does not cure a will defectively executed prior to its passage.

The opinion of the court was delivered by

Gibson, C. J.—If the execution of this will stood on the act of 1833, it would be imperfect; for though there was proof by one witness, and, on the principle of Greenough *vs.* Greenough, the attestation of another might stand for proof by him that the name actually signed was written by the testator's direction, it is not the name of the testator himself; and that was a part of the signature which could not be supplied with the name of a stranger accidentally substituted for it.   It may have been hard that a blunder of the penman should deprive a testator of his right to

[Long *v.* Zook.]

dispose of his property by will; but it is to be considered that this right is a positive, not a natural one; that it is surrounded with guards only to protect the testator himself; that it can be enjoyed only on the conditions annexed to it; and that there is no equitable relief against the words of a statute. So far was this principle carried in Stricker *vs.* Groves, 5 *Whart.* 386, that a refusal to sign a cripple's name to his will, followed at each opportunity, by an ineffectual effort on his part to have it signed by others, was held not to be a reason for dispensing with the mandate of the act. A man could not be convicted of forging the will of John Doe, for having signed it with the name of Richard Roe, because it would not purport to be, and could not be, the will of any one else than him whose name it bore. If he could not, it would be hard to see how a misnomer of the testator could be a compliance with the statute. As an abortive attempt to follow its directions, it would be no better than no signature at all. It might perhaps admit of more than a doubt whether the will in contest was well executed when it was made.

But it is unnecessary to express a positive opinion on that point, though the case was ruled on it; for where, as here, a mark is made, the act of 1848 dispenses with the name as an essential part of the signature, just as it dispenses with the mark where the testator's name is written by his authority. " Every last will and testament," it declares," " heretofore made, or hereafter to ˙be made, excepting such as may have been finally adjudicated prior to the passage of this act, to which the testator's name is subscribed by his direction or authority, OR to which the testator has made his mark, shall be deemed, and taken to be valid in all respects." It is thus distinctly declared that the name without the mark, or the mark without the name, may constitute the signature. The mark could gain no force from the attachment of the name to it without the testator's authority; and his name attached with his authority, would be sufficient without the mark. Of what account is it that the impertinent name of a stranger, happens to be attached to the pertinent mark of the testator ? As it could not corroborate, it ought not to weaken it. The name is indeed an index to the mark; but it does not conclusively point to the marksman : he may be individuated by proof *aliunde*. It is ancillary to the mark, but by no means inseparable from, or indispensable to it. At the common law, it is the marksman's touch, not the subscription of the name in connexion with it, which gives life to the instrument. Where, however, there is no mark or touch, the subscription of the name by direction of the party and in his presence becomes, by the principle of Hart *vs.* Struthers, 1 *Penn. R.* 291, his immediate act. The statute of 1833, inverted the common law principle so far as to exclude the mark, where there was one, from effect as an integrant part of the signature, and to require

[Long *v.* Zook.]

the name itself to be written by the testator's hand or at his bidding. Such was the construction put on it for reasons expressed in Greenough *vs.* Greenough, which were sufficient to convince us that the statute was not susceptible of any other. The argument against it was drawn from the severity of its operation—defeating, it was said, more true wills than false ones—and it is obvious that it could legitimately be addressed only to the legislature. It was listened to in the proper place, and produced the act of 1848, already quoted. Had that act said nothing about the name, the mark, without a label attached to it—and the name is no more than a label—would have clearly satisfied the statute; and nothing else would have done it. As it is, the name without the mark, when written by the testator's direction, would also satisfy it, looking, as it does, to distinct acts of plenary execution as mutual equivalents. As we have the testator's true and proper mark, the attachment of a false and improper label to it, is surplusage which never vitiates. The mistake of a scrivener in affixing such a label, can not avoid that which was perfect before and would be good without it. The fallacy is in supposing that the name, under the statute, governs the mark where there is one, instead of being governed by it. The name affixed by a scrivener may intimate a falsehood; but the mark, when it is made by the testator, never. The latter when proved to be genuine, may satisfy the statute; but the former, without the testator's authority, can not.

So far as the statute of 1848 would divest titles it has already been declared unconstitutional; but though this will was made before it, the death was after it; and, as no estate was vested in the testator's life time, the case is within the remedial provision. The persons who have been disappointed by it, have no constitutional right to object to it.

Judgment reversed and *venire de novo* awarded.

Rogers, J., and Coulter, J., dissented.

Bell, J., concurred in the judgment, but dissented from the observations of the C. J., on the subject of the mistake made in writing the testator's name. (See his reasons filed.)