## Rosato's Estate.

Argued March 31, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

230

*W. J. Fitzgerald,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellants.

*Frank W. Coyne,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, May 25, 1936:

The question propounded by the appellants in this case is: May a testator, who is able to write his name, sign a will by mark instead, if he chooses to do so? We are of opinion that he may. On this record, however, we are not convinced that the testator was able to write his name freely when he executed his will, for the reason which will hereafter be stated.

At the outset it should be noted that it is admitted the will was prepared in accordance with testator's directions, by a lawyer in good standing selected by him, and that he executed it by his mark in the presence of witnesses, one of them the lawyer.

The contention of appellants is that when he executed the will testator was able to write his name, and, this being so, under the Wills Act of June 7, 1917, P. L. 403, sections 2 and 3, 20 PS sections 191 and 192, the making of his mark was not a valid execution. Eliding portions of sections 2 and 3 of the act which are not here material they provide: "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his presence and by his express direction. . . . If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority

and to which he makes his mark or cross, unless unable to do so,—in which case the mark or cross shall not be required,—shall be as valid as though he had signed his name thereto." (Both sections require proof by two witnesses.)

Thus we have the requirement of signing by the testator himself, unless prevented by the extremity of last sickness, and in that event by some person in his presence and by his express direction; or if unable to sign his name *for any reason* other than the extremity of his last sickness, his name may be subscribed by another in the testator's presence, by his direction and authority and he shall make his mark or cross if able to do so, if not, it is not required. So the legalities of execution are (1) signing by the testator unless last sickness prevents, if so, then by another by direction; (2) if unable to sign for any reason other than last sickness, then by another by direction accompanied by testator's mark if not unable to make it. As we view the act the sufficiency of the reason for not signing his name is for the testator's determination; "any" reason which moves him not to sign is sufficient provided there is compliance with the other requisites of the act.

In their report the commissioners who drafted the act said that its new provisions were intended "to cover cases where a person is unable to sign his name, whether from lack of education or from physical weakness. The provision that the mark may be dispensed with if the testator be unable to make a mark is intended to cover such a case as that of a man who has lost both arms or is paralyzed."

While it is true this testator could write his name he had a serious nervous affliction causing his hand and arm to shake, which made it difficult for him to do so. He was shown to have endorsed checks by signing his name, but on more public occasions, such as registering as a voter, he did so by a mark, another writing his name. Different methods were used to assist him in writing, such as

binding his arm, using elastics and putting alcohol on his hand. When the time came for him to sign the will in the lawyer's office, he said he was not able to write because he was too nervous.

The conclusion which we have reached, that the will was validly executed, is in line with that announced by us in *Novicki v. O'Mara,* 280 Pa. 411, 415; *Girard Trust Co. v. Page,* 282 Pa. 174, 177; *Hughes's Est.,* 286 Pa. 466, 470; *Carmello's Est.,* 289 Pa. 554, 558; *Francis's Est.,* 299 Pa. 398, 400; *Kelly's Est.,* 306 Pa. 551, 554, and *Roney's Est.,* 309 Pa. 312.

In *Brehony v. Brehony,* 289 Pa. 267, 271, we said: "Whether a testator can write at all makes no difference in determining the validity of a will, nor does it matter whether he is so stricken that he cannot write, or can write only with difficulty. Where testator's mental conception is entirely clear and he desires to sign the will, but his physical powers unassisted will not permit it, and such assistance is called in, the incident of assistance becomes immaterial so long as there is a conscious wish of the testator that his hand should make the signature. His participation in the slightest degree, or acquiescence in or adoption of the signature is sufficient: *McClure v. Redman,* 263 Pa. 405, 411; *Fritz v. Turner,* 46 N. J. Eq. 515, 22 Atl. 125; *Kearney's Will,* 74 N. Y. S. 1045. Therefore, it makes no difference whether this will was signed by Mary Brehony herself with the aid of her brother, or by William Brehony at her request, as long as the signature was adopted and legal proof is present: *Hughes's Est.,* 286 Pa. 466, 469 et seq."

The decree of the orphans' court sustaining the action of the register in admitting the will to probate is affirmed at appellants' cost.