James' Estate.

Argued January 6, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*William A. Schnader,* of *Schnader & Lewis,* with him *Louis F. Floge, George M. Miller, Jr.,* and *C. Wilfred Conard,* for appellant.

274

*Martin V. Bergen,* for appellees.

OPINION BY MR. JUSTICE STERN, March 21, 1938:

Mrs. Annie James died on December 14, 1935, at the age of eighty-two. A paper dated February 8, 1932, and purporting to be her will, was presented for probate by her niece Mrs. Anna Donahower. It was signed by a mark, with the name of testatrix subscribed. By it the bulk of decedent's estate was given to Mrs. Donahower. Objection to the probate was made by a brother, a sister, and children of a deceased sister. The register of wills, after a hearing, admitted the instrument to probate, but this action was reversed by the orphans' court on appeal.

The sole question is whether there was sufficient proof that the alleged will was executed in conformity with legal requirements. Proponent, in addition to her own testimony, presented three witnesses, Mrs. Jennie A. Roller, Mrs. Laura Grace Hartley, and Elsie Rettig. Mrs. Roller testified that in response to an invitation from Mrs. James she visited her for the purpose of witnessing her will, that Mrs. James produced the paper and "asked me to sign her name to it in the place where it should be and my own name to witness her will." Mrs. Roller did this, and Mrs. James affixed her mark. No other persons were present. Mrs. James retained possession of the paper and sixteen days later asked Mrs. Hartley and Miss Rettig to sign it as witnesses. They testified that it was folded when presented to them and neither of them saw any of its contents or the name or mark of testatrix. In fact, they were not even informed that it was a will; they were asked merely "to sign a paper." Mrs. Donahower testified that Mrs. James had given her the data for a proposed will, that at her request she had had the will drafted by a lawyer, that she gave it to Mrs. James and read it to her several times, that she was not present when it was executed but subsequently talked to Mrs. James about it

and read and reread it to her. In answer to the question, "Did Mrs. James ever acknowledge that to be her will after it was signed?" Mrs. Donahower testified, "Oh, yes, she talked to me about it many times; of course, I had to put it in her box, she referred to it as her will."

Apparently it is conceded by all parties that Mrs. James was illiterate and did not know how to sign her name. The case therefore falls within section 3 of the Wills Act of June 7, 1917, P. L. 403, which provides that: "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, . . . shall be as valid as though he had signed his name thereto: Provided, That such will shall be proved by the oaths or affirmations of two or more competent witnesses."

There must be strict compliance with these statutory provisions, and a will is not valid unless executed precisely in accordance therewith. If executed by mark, it is not a lawful instrument unless testator's name was subscribed in his presence and by his direction and authority: *Hunter's Estate*, 328 Pa. 484. It is true that such direction and authority need not be express; it may be implied, as, for example, where testator sees his name written and then signifies his ratification of the act by affixing his mark: *Novicki v. O'Mara*, 280 Pa. 411; *Girard Trust Co. v. Page*, 282 Pa. 174; *Hughes's Estate*, 286 Pa. 466; *Carmello's Estate*, 289 Pa. 554; *Francis's Estate*, 299 Pa. 398. But, whether express or implied, the facts that such direction was given and that testator's name was subscribed in his presence must be proved, under the act, by two or more competent witnesses, each of whose testimony must be complete, independently of the other's, as to the existence of those circumstances and performance of those acts which the statute requires to exist and to be done as conditions

essential to the validity of the will. "Proof of execution must be made by two witnesses, each of whom must separately depose to all facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one. Where the evidence is positive, there can be no difficulty, for the witnesses then attest the simple fact of execution itself; but where the evidence of one, or both, is circumstantial, each must make proof complete in itself; so that, if the act of assembly were out of the question, the case would be well made out by the evidence of either. Circumstantial proof cannot, therefore, be made by two or more witnesses alternating with each other, as to the different parts of the aggregate of circumstances which are to make up the necessary sum of proof; the evidence of each not going to the whole. . . . Each must be competent to the whole proof, without aid borrowed from the other": *Hock v. Hock*, 6 S. & R. 47; *Derr v. Greenawalt*, 76 Pa. 239; *Simrell's Estate*, 154 Pa. 604; *McClure v. Redman*, 263 Pa. 405.

That it is necessary, where a will is not signed by the testator, for each of two witnesses to prove that testator's name was subscribed in his presence and by his direction and authority was ruled in *Grabill v. Barr*, 5 Pa. 441; *Asay v. Hoover*, 5 Pa. 21, and *Kelly's Estate*, 306 Pa. 551. In the last named case the two subscribing witnesses testified they saw the testatrix make her mark, but did not see her name subscribed to the will nor hear her request anyone to write it for her. The proponent thereupon offered to prove by the scrivener that, having read the will to the testatrix, he wrote her name thereon at her express direction, and then, in the presence of the two subscribing witnesses, she affixed her mark. It was held, nevertheless, that the validity of the will was not established, because there were not two witnesses to prove that the name of testatrix had been subscribed in her presence and by her direction and authority.

In the present case, it is clear that the testimony necessary to prove the proper execution of the will was lacking. Only Mrs. Roller's testimony fulfilled the requirements. Mrs. Hartley and Miss Rettig did not know how or under what circumstances the name of testatrix was subscribed to the paper, nor even that her name was there at all. Mrs. Donahower testified merely that Mrs. James talked to her about the will and referred to it as such. Proponent contends that this amounted to an acknowledgment by testatrix of its execution, and that it is not necessary for witnesses actually to see the signature of a testator being affixed, but that it is sufficient if the testator acknowledges his signature in their presence: *Irvine's Estate,* 206 Pa. 1; *Kessler's Estate,* 221 Pa. 314. This argument fails to recognize the difference between a will signed *by* the testator and one signed *for* him and to which he makes his mark. In the former instance, all that the statute requires is that the will be signed at the end thereof, and all that is necessary, therefore, for the proof of such a will, is to establish by two witnesses that the name appearing at the end is the signature of the testator; such proof may be furnished by witnesses who either saw the signature being subscribed, or heard the testator subsequently acknowledge it, or, being familiar with his handwriting, can identify it. Where, however, the will is executed by a mark and the name of the testator written by another person, the statute requires that the name be subscribed in testator's presence and by his direction and authority; therefore, in order to establish the validity of *such* a will, it is necessary to prove "by the oaths or affirmations of two or more competent witnesses," not only the presence of testator's name, but the circumstances under which it was subscribed. An "acknowledgment" by the testator that a document is his will does not meet this requirement, because it amounts merely to a statement involving a conclusion of law, and does not establish, nor even constitute evi-

dence of, the existence of the facts and fulfillment of the conditions upon which the validity of the will depends.

Of course a mark or cross is not capable of identification as is a signature, and therefore in such a case the danger of fraud is so obvious (although in the present case there is no intimation of it) that the law cannot be too strict in insisting upon proof of execution of the will by two witnesses who were actually present to see that there was compliance with the safeguarding provisions of the statute.

The decree of the court below is affirmed; costs to be paid by appellant.