# Morris Will.

388

Argued April 18, 1944. Before Maxey, C. J., Drew, Linn, Stern, Patterson, Stearne and Hughes, JJ.

*James L. Rankin,* of *Geary & Rankin,* for appellants.

*Lloyd Goman,* with him *E. A. Howell,* for appellee.

Opinion by Mr. Justice Patterson, May 22, 1944:
This is an appeal from the action of the court below in (1) refusing an issue devisavit vel non to determine the validity of the last will and testament of Louise E. Morris, and (2) in determining that execution of the will complied with Section 3 of the Wills Act of 1917, P. L. 403, 20 P.S. Section 192, and sustaining the probate thereof by the register of wills.

Louise E. Morris died June 17, 1943, unmarried and without issue, leaving to survive her as heirs and next of kin her nieces, Helena Webb and Velma Voschelle, appellants, one other niece, Alma Bell, and Augustus Gal-

lagher, a nephew. She was 55 years of age and had conducted a store on the ground floor of her premises until her condition of health required her to retire. Early in 1943 she was taken to the Chester hospital where she underwent an operation for cancer. She was returned to her home in April of 1943 and remained practically helpless until her death. Victor Dinkelman was a roomer at her residence for approximately two years before her decease. Three days after Miss Morris returned to her home from the hospital, Dinkelman gave up his employment at the Jeffrey Dye Works and assumed entire control of her household. On the morning of June 14, 1943, Miss Morris requested Dinkelman to get her a lawyer to write her will. He engaged E. A. Howell, Esq., who came to the Morris house about 2:00 P. M. the same day. She was fully cognizant of all her possessions and her relatives. She discussed the disposition of her property with Howell who, then and there, in her presence, drafted the will involved in this case. She disposed of her property in the following manner: $50 to the Immaculate Heart church for masses; $2000 and two houses to Victor Dinkelman; $2 to her brother, Frank Morris, and the remainder of her estate, real and personal, she directed to be sold and the proceeds equally divided among her nephew and three nieces. Howell was named the executor of her estate.

After the will had been drafted Dinkelman was summoned and sent out to secure two persons to witness the signing of the will. He returned with Mary Crechie and Frances DeFrank. The testimony of Howell and Dinkelman establishes that the decedent was too nervous and weak to sign her name, and in the presence of the two subscribing witnesses and Dinkelman, Howell suggested to her that he sign her name and she execute the will by her mark. With this suggestion she agreed, and Howell proceeded to sign her name to the will leaving space for her mark with the word "her" written above and "mark" below said space. In making her

mark she was assisted by Howell and Dinkelman. The subscribing witnesses then signed and immediately left the room.

The will was probated by the Register of Wills of Delaware County on June 18, 1943, and letters testamentary were granted thereon to E. A. Howell. On June 26, 1943, Helena L. Webb, appellant, filed a petition for a citation sur appeal from the probate of the will, alleging that decedent was not possessed of testamentary capacity, was subjected to undue influence, and that the manual execution of the will did not meet the requirements of the Wills Act, and requested the granting of an issue devisavit vel non. At the hearing upon the petition the subscribing witnesses failed to testify that the name of Louise E. Morris was written upon the will in their presence. They did not recall whether her name was actually subscribed thereto at that time. A second hearing was had at which their testimony again failed to establish those facts. Howell was recalled at the second hearing and testified substantially as before. The subscribing witnesses, upon hearing his testimony, sought out the attorney for the proponents of the will, and stated that the testimony given by Howell was exactly what occurred. Upon being informed of this recollection by the subscribing witnesses the chancellor held a third hearing at which time said witnesses fully corroborated the testimony of Howell and Dinkelman. The court refused to award an issue d. v. n. and sustained the probate of the will. This appeal followed.

The charges of undue influence and lack of testamentary capacity have been abandoned. It is conceded that decedent was not in the extremity of her last sickness at the time the will was made. Section 2 of the Wills Act is, therefore, not here involved.[1] Appellants

---

[1] "Every will shall be in writing, and, unless the person making the same shall be prevented by the extremity of his last sickness, shall be signed by him at the end thereof, or by some person in his

contend that the proof of the execution of the will fails to comply with Section 3 of the Wills Act which provides: "If the testator be unable to sign his name, for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross, unless unable so to do,—in which case the mark or cross shall not be required,—shall be as valid as though he had signed his name thereto; Provided, That such will shall be proved by the oaths or affirmations of two or more competent witnesses."

Strict compliance with the statutory provisions is necessary to the existence of a will: *James' Estate,* 329 Pa. 273, 275. The direction and authority required need not be express but may be implied from a consideration of the acts and circumstances surrounding the execution of the will: *Carmello's Estate,* 289 Pa. 554, 559; *James' Estate,* supra, 275; *Francis's Estate,* 299 Pa. 398, 400. Proof of the will by "two or more competent witnesses" is not restricted to those who are the subscribing witnesses: *Novicki v. O'Mara,* 280 Pa. 411, 416; *Dawson's Estate,* 277 Pa. 168, 171; *Carson's Appeal,* 59 Pa. 493, 496.

Appellants seek to support their contention by pointing to the contradictory statements of Mary Crechie and Frances DeFrank, contending that, under the circumstances, they were not worthy of belief. This ignores the testimony of Howell and Dinkelman, both competent witnesses, their interest merely affecting their credibility. They testified clearly and fully to the circumstances surrounding the signing of testatrix's name by Howell, the affixing of her mark, and the signing by the sub-

presence and by his express direction; and, in all cases, shall be proved by the oaths or affirmations of two or more competent witnesses; otherwise, such will shall be of no effect: Provided, That the presence of dispositive or testamentary words or directions, or the appointment of an executor, or the like, after the signature to a will, whether written before or after the execution thereof, shall not invalidate that which precedes the signature": Act of 1917, P. L. 403, Section 2, 20 P. S. 191.

scribing witnesses. Were the testimony of the subscribing witnesses to be completely discarded because of their inconsistencies the testimony of Howell and Dinkelman would be sufficient to satisfy the statutory requirements. It is apparent from a reading of the record that the challenged will is valid.

Whether the subscribing witnesses should be recalled for further examination is a matter resting within the sound discretion of the chancellor. This Court will not interfere except in the case of a manifest abuse of that discretion. The record before us shows no abuse of discretion.

In reviewing the chancellor's refusal to grant an issue d. v. n. the question to be determined by the appellate court is not whether it would have reached the same result had it been acting as chancellor but whether, having considered the evidence as a whole, a judicial mind could reasonably have reached the same conclusion. See *Noble's Estate*, 338 Pa. 490, 492. The granting of an issue d. v. n. is not a matter of right under all circumstances. What was said in *Minnig's Estate*, 300 Pa. 435, 439, is applicable here: "The rule established in cases of this kind and illustrated by *Cross's Estate*, 278 Pa. 170, and other recent decisions, is that where a substantial dispute exists on a material point of fact concerning the status of an alleged will and the evidence is of such weight as to support a verdict on either side, the court is bound to grant an issue to the common pleas on request made by an interested party in due time. But if the testimony is such that, after a fair trial, the court would feel constrained to set aside any verdict against the will as contrary to the manifest weight of the evidence, it cannot be said that a dispute has arisen, such as is necessary to require the granting of an issue to the common pleas. The present case is clearly one where the court would have been bound to set aside a verdict against the will." See *Porter's Estate*, 341 Pa. 476, 483.

Decree affirmed. Costs to be paid by appellants.