## Rhodes Will.

Argued March 16, 1960. Before JONES, C. J., MUS-MANNO, JONES, COHEN, BOK and EAGEN, JJ.

*David McNitt Barron,* with him *Harold W. Houck,* and *Houck & Barron,* for appellants.

*Harry L. Allshouse,* with him *Vance E. Booher,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 4, 1960:

Decedent, aged 83 years and a resident of Westmoreland County, died on January 12, 1959 survived by a brother, Benjamin H. Rhodes, and a sister, Nora R. Kiner, the present appellants.

The validity of decedent's will—allegedly executed on January 2, 1959 while decedent was in a hospital— is attacked in this proceeding. In this will decedent made four pecuniary bequests of $10,000 each, respectively, to his brother, Benjamin H. Rhodes, to his sister, Nora R. Kiner, to a friend, Vance E. Booher, Jr., and the Presbyterian Church of McVeytown, Pa.; all the residue of his estate he gave in trust to the Presbyterian Church of McVeytown, Pa.[1]

Prior to the presentation for probate of this will appellants filed caveats with the Register of Wills of Westmoreland County. Apparently by certification of the Register,[2] the Orphans' Court of Westmoreland County heard this matter.[3] After hearing, that court dismissed the caveats and directed the Register to pro-

---

[1] Decedent having died within thirty days after he executed this will, the gifts to the church are invalid: Wills Act of 1947, Act of April 24, 1947, P. L. 89, §7(1), 20 PS §180.7. As a result, *even if the will is valid,* decedent's entire estate, with the exception of the pecuniary bequest to Vance E. Booher, Jr., would go to the appellants under the terms of the will and the intestate laws.

[2] The record is not clear in this respect.

[3] The parties did not demand a trial by jury and the Orphans' Court acted as the ultimate trier of the facts.

bate the will. The present appeals were taken from that decree.

The validity of the will is attacked on four grounds: (1) that the will was not properly executed under Section 2(2) of the Wills Act of 1947;[4] (2) that the will was not properly proved under Section 4 of the Wills Act of 1947,[5] supra; (3) that the will was procured by undue influence; (4) that decedent lacked testamentary capacity.

Initially, we must determine whether this will, to which the decedent affixed his mark, was executed in compliance with Section 2(2) of the Wills Act of 1947, supra, which provides: "Signature by mark. If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, He makes his mark in the presence of two witnesses who sign their names to the will in his presence." To comply with this statutory provision a proponent of this type of will must prove: (1) the *inability* of the testator to sign his name for any reason; (2) that the *mark was made by the testator;* (3) that, either before or after the testator made his mark, his *name* was subscribed; (4) that the subscription of testator's name took place in his presence; (5) that when testator made his mark *two witnesses were present;* (6) that these witnesses *signed their names* to the will; (7) that the subscription of the witnesses' names took place *in the testator's presence.* Section 2(2) sets forth *what* must be proven to validate a will executed by mark.

On the other hand, Section 4 of the Wills Act of 1947, supra, sets forth *how* the requisite facts under

---

[4] Act of April 24, 1947, P. L. 89, §2, 20 PS §180.2.

[5] Id., §4, 20 PS §180.4.

Section 2(2) must be proven. Section 4 provides: "(a) General rule. . . ., *no will* shall be valid unless proved by the oaths or affirmations of *two* competent witnesses". (Emphasis supplied). This section sets forth in statutory form the well-established and salutary rule in the law of wills known as the "two witness rule": *Asay v. Hoover,* 5 Pa. 21, 33; *Grabill v. Barr,* 5 Pa. 441, 445; *Kelly's Estate,* 306 Pa. 551, 160 A. 454; *James' Estate,* 329 Pa. 273, 198 A. 4; *Orlady's Estate,* 336 Pa. 369, 9 A. 2d 539; *Morris Will,* 349 Pa. 387, 37 A. 2d 506; *Cohen Will,* 356 Pa. 161, 51 A. 2d 704; *Walkiewicz Will,* 392 Pa. 310, 140 A. 2d 589. Chief Justice Gibson in *Hock v. Hock,* 6 S. & R. 47 succinctly stated this rule: "Proof of execution must be made by two witnesses, each of whom must separately depose to all the facts necessary to complete the chain of evidence, so that no link in it may depend on the credibility of but one". More recently the rule was concisely stated by Mr. Justice (later Chief Justice) Stern in *James' Estate,* supra (p. 275): "There must be a strict compliance with these statutory provisions, and a will is not valid unless executed precisely in accordance therewith. If executed by mark, it is not a lawful instrument unless testator's name was subscribed in his presence and by his direction and authority: Hunter's Estate, 328 Pa. 484. . . . But, . . ., the facts that such direction was given and that testator's name was subscribed in his presence must be proved, under the act, by two or more competent witnesses, each of whose testimony must be complete, independently of the other's, as to the existence of those circumstances and the performance of those acts which the statute requires to exist and to be done as conditions essential to the validity of the will". As a safeguard against possible fraud in the execution of wills the "two witness rule" needs no defense at this late date.

While the validity of a will requires proof from *two* witnesses, such witnesses may be nonsubscribing as well as subscribing provided their competence be established: *Carson's Appeal,* 59 Pa. 493; *Novicki v. O'Mara,* 280 Pa. 411, 124 A. 672; *Morris Will,* supra; *Cohen Will,* supra; *Walkiewicz Will,* supra.

When this will was executed, three persons—Vance E. Booher, Sr. (the scrivener), H. E. Holloway and Margaret B. King—were present. All three persons testified that decedent made his mark, that the mark was made in their presence, that Mrs. King and Mr. Holloway signed their names as subscribing witnesses and that such subscription took place in decedent's presence. It is undisputed that decedent's physical condition was such that he was unable to sign his name. However, neither of the subscribing witnesses could testify to the circumstances surrounding the subscription of the decedent's name, who made it, when it was made or whether it was made in the decedent's presence. Mrs. King stated that she did not know who wrote the name Cloyd M. Rhodes on the will or the words "his mark" above and below the place where the mark appears. Mr. Holloway stated that he could not recall whether Cloyd Rhodes' name had been written before he entered decedent's room or whether it was written while he was there. Attorney Booher, the scrivener, testified that he wrote "Cloyd M his mark Rhodes" on the paper in decedent's presence.

In its opinion the court below stated: "If the testator's name is subscribed out of his presence, the execution of the Will is faulty. The testimony of the scrivener is that the decedent's name was subscribed in his presence but the two subscribing witnesses testified to the effect that they do not remember this detail. The Act requires only that the mark be made in the presence of two subscribing witnesses and, in this case, they so testify. The Act, however, does not

require that the subscribing witnesses should necessarily observe or testify to the subscription of the testator's name in his presence, nor does the Act provide for any specific manner in which this act should be done, or require any specific proof: *Walkiewicz Will*, 392 Pa. 310". In view of Section 4, supra, with this conclusion of the court below we must disagree.

*Walkiewicz Will*, supra, is not apposite. In *Walkiewicz* two subscribing witnesses testified that testatrix made her mark but were unable to testify that testatrix' name was subscribed to the will in her presence. *However two non-subscribing witnesses testified that testatrix' name was subscribed to the will in her presence.* The thrust of the attack on the validity of the *Walkiewicz* will was that proof of the subscription of testatrix' name in her presence came from non-subscribing rather than subscribing witnesses, and *Walkiewicz* simply held that such proof could come from non-subscribing witnesses. *Walkiewicz* neither held that such proof was unnecessary nor that such proof on the part of only one witness was adequate.

In *Kelly's Estate*,[6] supra, the will was allegedly executed while testatrix was in the hospital and two subscribing witnesses testified that they saw testatrix make her mark and identified their own signatures as witnesses but could not testify that they saw the testatrix' name subscribed to the instrument. The proponent offered to prove by the testimony of *one* witness, the scrivener, that he had affixed the name of testatrix to the will prior to the making of her mark

---

[6] In respect to the requirement that the testator's name must be subscribed to the will in his presence, Section 2(2) of the Wills Act of 1947, supra, and Section 3 of the Wills Act of 1917, Act of June 7, 1917, P. L. 403, 20 PS §192 are alike, although the latter Act required further that such subscription be at the direction and authority of the testator. Decisions under the 1917 Act are therefore apposite.

and such subscription took place in testatrix' presence. The trial court sustained an objection to such testimony on the ground that, even though the one witness should so testify, such testimony alone would not meet the legal probative requirements. This Court affirmed that action on the part of the trial court.

In *Orlady's Estate*, supra, when the testatrix made her mark to the will and codicil three persons—testatrix, the scrivener and testatrix' physician—were present. The scrivener testified that he wrote testatrix' name on the will before she made her mark but the physician was unable to testify that he saw testatrix' name affixed to the will. Mr. Justice LINN, speaking for this Court, stated (p. 376) : "The proof of the proponent therefore fails to bring the transaction within the requirements of the Wills Act".

*Hughes's Estate,* 286 Pa. 466, 471, 133 A. 645 and *Hunter's Estate,* supra, are illustrative of the importance placed by this Court on the affixation of a testator's signature in his presence.

In Bregy, Intestate, Wills and Estates Acts of 1947, the identical problem herein presented was considered : "Suppose, for example the scrivener can testify that he subscribed testator's name to the document in testator's presence and the subscribing witnesses can testify that they saw testator make his mark in their presence and that they subscribed their own names in his presence. The proviso in clause (2) of section 2 would be satisfied in such a case, but proof under the general provisions of section 4 would be defective, because only one witness (the scrivener) testified that the testator's name was subscribed in the testator's presence". (p. 2311).

In view of the legislative mandate that *"No will shall be valid"* without proof thereof by *two* competent witnesses the testimony herein presented falls short of proving the validity of this will in that only

*one* competent witness was able to prove that testator's signature was affixed to this will in his presence and, accordingly, the probate of this will must be set aside.[7]

In view of the conclusion we have reached it is unnecessary for us to consider the questions of testamentary capacity or undue influence.

Decree reversed. Costs placed on the estate.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

Cloyd M. Rhodes, 83, lay mortally ill in the Westmoreland Hospital in Greensburg. He could see the sun setting on his life, and in the gathering dusk of reflection and resignation, he decided to apportion his worldly goods and possessions among those to whom he felt a bond of attachment in love, devotion, and gratitude. He spoke with his attorney who obtained from him data as to the names of the intended beneficiaries and what they were to receive, and the attorney then drafted a will in accordance with the desires of the dying man.

On the following morning, which was January 2, 1959, the attorney came to the hospital with the drafted will and read it to Rhodes who indicated his approval of the contents. His physical energies, however, by this time had depleted to the extent that he was unable to affix his signature to the paper.

The law, with its million eyes, had foreseen the possibility of such a situation and it had already declared,

---

[7] As Chief Justice GIBSON observed in *Long v. Zook*, 13 Pa. 400, 402: "It may have been hard that a blunder of the penman should deprive a testator of his right to dispose of his property by will; but it is to be considered that this right is a positive, not a natural one; that it is surrounded with guards only to protect the testator himself; that it can be enjoyed only on the conditions annexed to it; and that *there is no equitable relief against the words of a statute*". (Emphasis supplied).

in its latest form through the Wills Act of 1947, that when, for any reason, a testator is unable to sign his name, his expression, as revealed in a testamentary document, will have legal effect if he affixes his mark to the testamentary document. In order to forestall deception and fraud, the law also provides that the mark must be made in the presence of two witnesses who will sign the will in his presence. This was done in the case before us for consideration. H. E. Holloway and Margaret B. King, standing by his bed, witnessed Rhodes making his mark, with the aid of the scrivener, Attorney Vance E. Booher, on the will.

At the same time that Attorney Booher held Rhodes's hand as he traced his mark on the will, Booher wrote above and below the mark the name of the Testator, Cloyd M. Rhodes. This was also done in accordance with law. Section 2(2) of the Wills Act provides: "If the testator is unable to sign his name for any reason, a will to which he makes his mark and *to which his name is subscribed in his presence before or after he makes his mark,* shall be as valid as though he had signed his name thereto." (Emphasis supplied.)

Rhodes died ten days later and his will was duly probated. Two of the beneficiaries, who expected more than was left to them, attacked the probate and have appealed to this Court, urging reversal of the order of the Orphans' Court of Westmoreland County admitting the will to probate. This Court, by a majority thereof, has now reversed the decision of the lower court, by declaring Rhodes' will of no effect, and by so doing, has nullified the clearly expressed intention of the testator.

On what basis does the Majority do this? It says that the Wills Act requires that the name of the testator must be written into the will in the presence of two witnesses. I will repeat what the Wills Act says

in this regard: "If the testator is unable to sign his name for any reason, a will to which he makes his mark and TO WHICH HIS NAME IS SUBSCRIBED IN HIS PRESENCE BEFORE OR AFTER HE MAKES HIS MARK, shall be as valid as though he had signed his name thereto: Provided: *He makes his mark in the presence of two witnesses* who sign their names to the will in his presence." (Emphasis supplied.)

From this language it is as clear as a mountain by the sea that the only act which needs to be witnessed by two persons is the affixing of the mark by the testator. There is nothing in the statement: "to which his name is subscribed in his presence before or after he makes his mark," which indicates how that subscription shall be proved. In the absence of any specific quantum of proof required by the Act, the proof shall be supplied in any manner that it can be proved in accordance with existing rules of evidence. Thus it may be proved by a number of witnesses, it may be proved by one witness alone, it may be proved by circumstantial evidence. In the case at bar, the subscription of the testator's name was proved by the testimony of the scrivener, plus circumstantial evidence which utterly excludes any possibility of fraud or deception.

In spite of this absolutely undisputed evidence that Rhodes' name appeared on the document when his mark authenticated the will, the Majority insists that the subscription must be witnessed by two persons. In that insistence, the Majority reads into Section 2(2) of the Wills Act language which is simply not there. The Majority assumes that because the proviso at the end of Section 2(2) says: *"Provided: He makes his mark in the presence of two witnesses who sign their names to the will in his presence,"* this means that everything connected with the making of a will under

the circumstances indicated must be proved by two witnesses.

If the Majority's reasoning in this respect is carried to its logical conclusion, then everything connected with a will must be proved by two witnesses. For instance, two witnesses would be required to prove the actual writing of the will, that is, its physical manufacture. But we know that a will is not a will until it is signed by the testator. What happens prior to the signature is mere prelude and requires no special proof of its happening. For instance the proponent of a will does not have to give an explanation of misspelled words or even interlineations in the will unless there is some charge that the will was tampered with *after* it was signed.

When a will is signed by a mark, the writing in of the testator's name above or beneath his mark is merely a matter of identification and is not intended to provide any additional weight to the authenticity of the will. If the testator is illiterate to the extent that he knows no writing at all, the subscription of his name will mean nothing to him except that it is a formality which gives him assurance that all is being done in accordance with his wishes.

There is no dispute in this case that the X mark made by Rhodes is genuine and there is no dispute that the two witnesses to the mark signed their names in the presence of the testator and in the presence of each other. Why then declare the will of no effect? Where is there any doubt in this entire proceeding? Where is there any ambiguity? Where is there any suspicion of wrongdoing?

By its decision the Majority is arbitrarily adding to the Wills Act a condition never expressed and, therefore, never intended by the Legislature. If the Legislature had intended that the mere ministerial act of writing in the testator's name had to be done in the

presence of two witnesses, it would have been quite a simple matter for the Legislature to have so stated. In that event, Section 2(2) of the Wills Act would read: "If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, *that the subscription of his name* and the making of his mark shall be done in the presence of two witnesses who sign their names to the will in his presence." But the Legislature did not do this.

From time to time this court interprets language employed by the Legislature in a manner which would suggest that the Legislature is inordinately penurious in the expenditure of words or that there is a shortage of ink in the legislative chambers or committee room where the bills have been drafted. To me it seems utterly absurd that the drafter of a piece of legislation of the importance of the Wills Act would forget, within the space of two sentences, so important a requirement as the one this Court now says is in Section 2(2) by inference. The fact that the drafter, after speaking of the subscription of the testator's name, omits in the very next sentence any reference to the manner in which that subscription is to be proved, should be conclusive proof that he did not intend that the subscription had to be established by any particular number of witnesses.

It is an indisputable rule of interpretation of statutes that the particular must always prevail over the general, if there is any conflict between them.

The Majority Opinion does not analyze the English construction of Section 2(2) but cites certain cases in assumed support of its position and quotes Section 4, of the Wills Act, which provides: "(a) General rule . . . no will shall be valid unless proved by the oaths

or affirmations of two competent witnesses." But this provision obviously refers to proving the signature or the mark of the testator and not to the content of the will. As I have already said, if all features of a will must be proved by two witnesses, then two witnesses would have to testify that they actually saw the typist at the typing operation, or, if the will is handwritten, two witnesses would have to testify that they saw the scrivener dipping his pen in the ink bottle and physically applying the pen to the paper. Two witnesses would have to prove that the testator had not been duly influenced, etc., etc.

The Majority cites prior decisions of this Court in support of its position. I doubt that those decisions do what the Majority ascribes to them. But I am so certain of the error of the Majority's position of today that I would say that if the prior decisions referred to are in point, then they are also in error. I believe in Stare Decisis when it accords with demonstrable verities, but I refuse to be guided by an obviously misguided hand. I refuse to participate in the perpetuation of a proved error. I refuse to assent to a dogmatic repudiation of a testator's expressed desire when we know that the very purpose of all testamentary law is to ascertain the will of the testator and to effectuate it.

This Court has said times without number that the testator's intention shall be the pole star to guide the courts in enforcing the disposition of his estate, it has said also that in ascertaining the testator's intentions the court should metamorphically sit in his armchair, it has said that the testator's intent must be determined from what appears within the four corners of his will. And yet, after making all these resolves, no less wholesome and truthful because they are cliches, the Majority proceeds to dim the pole star, to demolish the armchair, and to read into the will what is not

only not within the four corners of the will but completely outside the dwelling of the testator's thoughts, desires, and expressed intention.

Of course, I realize that where an opinion writer speaks of the pole star, the armchair and four corners, he speaks of interpreting what the testator meant by certain language in the will. Nevertheless, I draw from these expressions the inescapable conclusion that the courts want to effectuate the testator's desires. Here, there is no doubt of the testator's intention, but, notwithstanding, the Court renounces the testator's intentions by introducing conditions which do not form part of the law. Once the authenticity of a testamentary writing is established, the courts should be eager to see its provisions translated into reality and not seek barriers to prevent the owner of the property from speaking his desires, even though his words are spoken from the grave.

To the extent that prior decisions of this Court impose a condition not to be found in the Wills Act I would overrule those decisions. We are not required to follow what is palpably wrong any more than a navigator would be expected to steer his ship into visible rocks simply because the charted course runs through an area of assured disaster.

It so happens, however, that I am more faithful to Stare Decisis than is the Majority in this case, as I will quickly demonstrate. The case upon which the Majority apparently mostly relies is *James Estate,* 329 Pa. 273. But that case is not applicable here at all. The *James Estate* case was decided in 1938, obviously prior to the enactment of the Wills Act of 1947. In *James Estate* this Court was interpreting and enforcing the Wills Act of *1917.*

The Majority quotes from *James Estate* as follows: "The fact that such direction was given and that testator's name was subscribed in his presence must be

proved, under the act, by two or more competent witnesses."

But, it must be noted that Section 3 of the Wills Act of 1917, provides: "If the testator be unable to sign his name; for any reason other than the extremity of his last sickness, a will to which his name is subscribed in his presence, by his direction and authority, and to which he makes his mark or cross . . . shall be as valid as though he had signed his name thereto: Provided, That such will shall be proved by the oaths or affirmations of two or more competent witnesses."

It must be clear that the proviso in Section 3 of the Act of 1917 is quite different from the proviso in Section 2(2) of the Act of 1947. Under the Act of 1917 the *will* "shall be proved by . . . two or more competent witnesses." But, under the Act of 1947, as I have already twice said, it is only the testator's mark which must be made in the presence of two witnesses.

And now to revert to Stare Decisis. To the extent that prior decisions of this Court control or at least guide present decisions, it is only natural that the latest pronouncement of this Court on the subject involved is the one which is most authoritative. And to the extent that a recent decision contradicts what was said in an older decision, the recent one, by implication, overrules the older decision. And now I call attention to the case of *Walkiewicz Will*, 392 Pa. 310, decided only two years ago, wherein Justice COHEN, speaking for a unanimous Court, said: "As to the subscribing of the testator's *name*, the act provides only that this be done in testator's presence either before or after he makes his mark. The act does not require that the signing of the testator's name to the will in his presence be proved in any specified manner. See Comment, Joint State Government Commission, 20 P.S. 180.2."

Since, as we said in *Walkiewicz*, the subscription of the testator's name in his presence need not be proved in any specified manner, it follows that the testimony of one witness, duly corroborated by the surrounding circumstances, as is true here, is enough to discharge the requirements of the Act.

What the Majority is doing in the instant case amounts to a rewriting of Section 2(2) of the Act of 1947. This, I submit, it has no right to do, and I accordingly strongly dissent.