472 A.2d 205

**In the Matter of the ESTATE OF Guernio CONIGLIO, Deceased.**

**Appeal of Josephine ROSSETTI.**

Superior Court of Pennsylvania.

Argued June 9, 1983.

Filed Jan. 27, 1984.

Petition for Allowance of Appeal Denied May 1, 1984.

528

John Cooper, Erie, for appellant.

Evan Edward Adair, Erie, for appellee.

Before CERCONE, President Judge, and SPAETH and HESTER, JJ.

SPAETH, Judge:

This is an appeal from a decree admitting to probate a will executed by mark. We affirm.

The decedent, Guernio Coniglio, died on October 10, 1979, survived by two daughters, Josephine Rossetti and Margaret Ambrogio. On November 1, 1979, Mrs. Ambrogio offered for probate what purported to be decedent's will, executed on July 10, 1979, appointing her executrix, and leaving her the entire estate. Mrs. Rossetti challenged the will, claiming undue influence and lack of testamentary

capacity. When the matter came up for hearing, on August 27, 1981, she withdrew these claims and instead claimed only that the will had not been properly executed. After hearing this claim, the trial court entered a decree upholding the will. Mrs. Rossetti filed exceptions, but on February 18, 1982, the court dismissed the exceptions and made the decree final.

1

The Probate, Estates & Fiduciaries Code provides:

Every will shall be in writing and shall be signed by the testator at the end thereof, subject to the following rules and exceptions:

\* \* \* \* \* \*

**(2) Signature by mark.** If the testator is unable to sign his name for any reason, a will to which he makes his mark and to which his name is subscribed in his presence before or after he makes his mark, shall be as valid as though he had signed his name thereto: Provided, That he makes his mark in the presence of two witnesses who sign their names to the will in his presence.

20 Pa.C.S.A. § 2502(2).

This provision is copied from The Wills Act of 1947, 20 P.S. § 180.1 *et seq.*, and its requirements were explained in *Rhodes Will*, 399 Pa. 476, 160 A.2d 532 (1960), as follows:

To comply with this statutory provision a proponent of this type of will must prove: (1) the *inability* of the testator to sign his name for any reason; (2) that the *mark was made by the testator;* (3) that, either before or after the testator made his mark, his *name* was subscribed; (4) that the subscription of testator's name took place in his presence; (5) that when testator made his mark *two witnesses were present;* (6) that these witnesses *signed their names* to the will; (7) that the subscription of the witnesses' names took place *in the testator's presence.*

*Id.,* 399 Pa. at 479, 160 A.2d 532.

■ Each of the seven elements thus identified by the Court must be proved by the testimony of two witnesses. Thus, in *Rhodes Will* the will was held invalid because element (4) was proved by the testimony of only one witness. This "two-witness rule" was embodied in Section 4(a) of The Wills Act of 1947 ("... no will shall be valid unless proved by the oaths or affirmations of two competent witnesses"), *Rhodes Will, supra,* and it remains the law, for it has been carried forward as Section 3132 of the Probate, Estates & Fiduciaries Code ("All wills shall be proved by the oaths or affirmations of two competent witnesses ...."). *And see* Comment to Section 2504.1 of the Probate, Estate & Fiduciaries Code (Section 4(a) of Wills Act carried forward in Section 2504 of Code, which was subsequently repealed because it "unnecessarily duplicated Section 3132" of Code).

■ The two-witness rule does not require that the proof always be by the testimony of two *subscribing* witnesses; sometimes the proof may be by *non* -subscribing witnesses. *Rhodes Will, supra.* However, Section 3132 of the Probate, Estates & Fiduciaries Code provides that

the proof must be by subscribing witnesses, except to the extent that the register is satisfied that such proof cannot be adduced by the exercise of reasonable diligence.

■ In summary, then, in deciding whether a will executed by mark may be admitted to probate, three questions must be asked: (1) Has each of the seven elements identified in *Rhodes Will* been proved? (2) Has each element been proved by the testimony of two witnesses? And (3) if with respect to any element the two witnesses are not both subscribing witnesses, was the register (or trial court, if, as in this case, the register certified the matter to the court) satisfied that in the exercise of reasonable diligence, proof by subscribing witnesses was not possible?

2

As appellant, Mrs. Rossetti argues that two of the seven elements identified in *Rhodes Will, supra,* have not been

sufficiently proved: that the decedent was unable to sign his name at the time he executed the will by making his mark; and that the decedent's name was subscribed to the will in his presence.

### (a)

Generally stated, the evidence was as follows: The decedent's attorney prepared the will and mailed it to Sebastian Ambrogio, Margaret Ambrogio's husband, with a letter explaining how a will should be executed when the testator signed by mark. Mr. Ambrogio was a proprietor of a restaurant and bar. He told the decedent that he had received the will, and put it behind the bar. When the decedent said that he wanted to execute the will, Mr. Ambrogio asked Fred Tomassi and Francis Pfister, who were patrons of the restaurant, to act as witnesses. The decedent could speak Italian but only a little English, and Mr. Ambrogio asked Mr. Tomassi to participate because Mr. Tomassi knew both Italian and English. The decedent, Mr. Tomassi, Mr. Pfister, and Mr. Ambrogio gathered around a table near the bar. Mr. Tomassi explained the will to the decedent in Italian and English. The decedent said that he understood, and he put his mark on the signature line at the end of the will. Mr. Ambrogio wrote the decedent's first name to the left of the mark, and his last name to the right, and Mr. Tomassi and Mr. Pfister signed as witnesses. (There is some conflict in the testimony as to whether Mr. Tomassi and Mr. Pfister signed their names before or after Mr. Ambrogio signed the decedent's name.) Either that day or the next, Mr. Ambrogio mailed the completed will back to the decedent's attorney.

The principal witness regarding the decedent's inability to sign his name was Mr. Ambrogio. On direct examination he testified that "[i]t was necessary" for the decedent "to put his 'X'." N.T. 14. On cross examination he acknowledged that the decedent "had, in the past several years, been able to sign his name," N.T. 24, and, in response to a question from the court, that he had seen the decedent sign his name, *id.*; but he went on to say that that had been in

1977, and that "at the time of the Will," the decedent could not sign his name, N.T. 24–25. In addition, the attorney who had prepared the will testified that

> I mailed the will out to Mr. and Mrs. Ambrogio with a letter of instruction on how a Will should be executed when somebody had to make a mark because they [*sic*] couldn't make their [*sic*] signature. I remember that specifically because that's the only instance when that has ever come up in my practice.

N.T. 7.

While not entirely clear, the record sufficiently indicates that in preparing the will, the attorney was acting on the decedent's instructions. Mr. Ambrogio testified:

> [The will] was mailed to me by Attorney English. My father-in-law had requested a meeting with Mr. English for the purpose of a Will and it was made up and I saw it when it came in.

N.T. 10.

Finally, the record discloses that as prepared by the attorney, the will recites that "I, Guernio Coniglio, testator, being unable to sign my name because of age and partial blindness, have had my name subscribed for me and in my presence and at my direction by _____, whereupon I have made my mark ...." A similar recitation appears in the attestation clause.

In *Rosato's Estate*, 322 Pa. 229, 185 A. 197 (1936), the Court stated that the question involved was, "May a testator, who is able to write his name, sign a will by mark instead, if he chooses to do so?" *Id.*, 322 Pa. at 230, 185 A. 197. The Court answered, "We are of opinion that he may." *Id.* To be sure, this language was probably somewhat too broad, for the evidence showed that the testator's "choice" was hardly an uninhibited one. Although it appeared that the testator had endorsed checks by signing his name, it also appeared that

> he had a serious nervous affliction causing his hand and arm to shake, which made it difficult for him [to sign his name] .... Different methods were used to assist him in

writing, such as binding his arm, using elastic and putting alcohol on his hand. When the time came for him to sign the will in the lawyer's office, he said he was not able to write because he was too nervous.

*Id.*, 322 Pa. at 231–32, 185 A. at 198.

Bregy's comment seems just:

> *Rosato's Estate* demonstrates that incapacity is a relative rather than an absolute concept, but it would seem that as a bare minimum it must be proved that the testator chose the easier method of execution because of some sort of disability.

> Bregy, Intestate, Wills and Estates Acts of 1947, § 2, ¶ 3, p. 2206 (1949).

■ Here the proof of "some sort of disability" was not nearly so strong as in *Rosato's Estate;* indeed, it may fairly be characterized as careless. Nevertheless, the testimony was uncontradicted that the decedent understood that he was executing his will, and that he had chosen to sign by making his mark; nor did appellant offer any evidence contesting the accuracy of the recitation in the will that the decedent was unable to sign his name "because of age and partial blindness." On balance, we think the trial court was entitled to find that decedent did have "some sort of disability," and that because he did, he chose, instead of signing his name, to make his mark as "the easier method of execution."

■ It remains to consider whether the two-witness rule was satisfied. We believe that it was. As just discussed, the decedent's inability to sign his name was proved by two witnesses: Mr. Ambrogio and the lawyer who prepared the will. It is true that neither of these witnesses was a subscribing witness. However, as we have discussed, Section 3132 of the Probate, Estates & Fiduciaries Code provides that "the proof must be by subscribing witnesses, except to the extent that the register is satisfied that such proof cannot be adduced by the exercise of reasonable diligence." Here we think that the trial court was entitled

to find that proof of the decedent's inability to sign his name could not, by the exercise of reasonable diligence, be proved by the testimony of the subscribing witnesses, Mr. Tomassi and Mr. Pfister. Both testified that they thought it unusual that the decedent should sign by making his mark. N.T. 36, 40. Evidently, therefore, they did not know of the decedent's inability, testified to by Mr. Ambrogio and the lawyer who prepared the will. This lack of knowledge was to be expected, for they were only casual acquaintances of the decedent. N.T. 28, 38–39. Since the decedent's inability to sign his name could therefore not be proved by the testimony of the subscribing witnesses, it was proper to prove it by the testimony of two other, non-subscribing, witnesses. *Rhodes Will, supra.*

### (b)

Appellant's argument that the evidence was insufficient to prove that the decedent's name was subscribed to the will in his presence depends upon an appraisal of Mr. Pfister's testimony. For while Mr. Ambrogio testified that he had subscribed decedent's name, in decedent's presence and in the presence of Mr. Tomassi and Mr. Pfister, N.T. 17–19, 22–23, Mr. Tomassi had no recollection of seeing decedent's name subscribed, N.T. 37. Therefore, if the two-witness rule is to be satisfied, it must appear from Mr. Pfister's testimony that he saw decedent's name subscribed, in decedent's presence. *Rhodes Will, supra.*

Appellant has characterized Mr. Pfister's testimony as "confused." Brief for Appellant at 10. However, Mr. Pfister did testify that he saw Mr. Ambrogio subscribe the decedent's name, after the decedent had made his mark, and in the presence of the decedent and Mr. Tomassi. N.T. 43. It is true that on cross-examination Mr. Pfister admitted that he did not "actually see" Mr. Ambrogio subscribe the decedent's name but, rather, that he "assumed" that the subscription was done by Mr. Ambrogio. N.T. 51, 53. We find, however, that the evidence supported this assumption, or, to put the matter more accurately, that the trial court

was entitled to find that the action by Mr. Ambrogio that Mr. Pfister *had* "actually see[n]" was Mr. Ambrogio subscribing the decedent's name on the will. Thus, Mr. Pfister testified that after the decedent made his mark and he and Mr. Tomassi had signed their names, he saw Mr. Ambrogio pick up a pen, N.T. 48, 51, stoop over the will, N.T. 43, 55, and write something on the will; that the decedent's name was not written on the will when the decedent made his mark, N.T. 43, 50; but that after Mr. Ambrogio wrote something on the will, the decedent's name was written on the will:

Q. [Appellant's attorney] And then when did you see that, Guernio Coniglio on there?

A. [Mr. Pfister] Right after he [Mr. Ambrogio] put it down and we all had done our particular signing, then Ben [Mr. Ambrogio] put his—wrote that on there.

Q. How do you know that that's his signature?

A. I assumed that's his signature because that's the way he writes.

Q. That's the way he writes?

A. I'm sure.

Q. You're basing that—

A. I'm basing that because he wrote it there.

N.T. 46

■ Again, it must be noted that the proof of subscription was not by two subscribing witnesses; it was by one subscribing witness, Mr. Pfister, and by Mr. Ambrogio. However, this did not contravene Section 3132 of the Probate, Estates & Fiduciaries Code, for since Mr. Tomassi, the other subscribing witness, had no recollection regarding the subscription, proof of subscription could not, by the exercise of reasonable diligence, be made out from his testimony; it was therefore proper to prove subscription by a combination of the testimony of one subscribing and one non-subscribing witness. *Rhodes Will, supra.*

In thus reaching our conclusion that the elements of execution challenged by appellant were adequately proved, by two witnesses, we have been mindful that the proof was not exemplary. Indeed, we have characterized the proof of inability to sign as "careless," and the proof of subscription is also somewhat suspect, for Mr. Pfister acknowledged that at his pretrial deposition, when asked whether he knew who had subscribed the decedent's name, he had answered, "I have no idea about that one." N.T. 50. Nevertheless, he explained the answer by saying that he had made it without giving the matter sufficient thought, N.T. 51, and further by saying, as we have discussed, that he had assumed that Mr. Ambrogio had made the subscription.

The trial court, too, was mindful of the weaknesses in the proof and yet accepted it. In doing so, the court pointed out that

> these two witnesses [Mr. Tomassi and Mr. Pfister] ... have absolutely no interest in this matter and one of [them, Mr. Pfister,] just happened to walk in at the time a witness was needed, [and] could not recall every little detail required of them at the hearing. The hearing was held two years after the Will was executed.

Slip op. at 5.

In this regard, it may be noted that Mr. Ambrogio was also, at least in large part, a disinterested witness, for while his wife was the executrix and sole beneficiary under the will, they were separated. Thus, when asked about his interest, he replied:

> No. I have no interest. In fact, I'm in the middle of a divorce action. I have no interest in this whatever. I benefit nothing from this.

N.T. 20.

The trial court also noted this testimony. Slip op. at 3.

In concluding its opinion, the court stated that it "[found] that all the witnesses were credible" and that "[r]eading the entire testimony of each witness, this court is of the opinion that this Will was properly executed and that all the requirements of the Probate Code were met." Slip op. at 5.

538

We have not been persuaded that we should disturb this conclusion.

■ We are aware that upholding the will results in the disinheritance of Mrs. Rossetti, one of the decedent's two daughters. However, it has long been the law that "the intention of the testator is of primary importance, the lodestar, cornerstone, cardinal rule. [ ] So that that intention shall be given full expression, it can be denied only where it is unconstitutional, unlawful, or against public policy.[ ]" *In Re Estate of Janney*, 498 Pa. 398, 401, 446 A.2d 1265, 1266 (1982) (footnotes omitted). No such claim is made, nor does anything suggest that it could be made, here.

Affirmed.